### UNION CASUALTY & SURETY CO. v. GRAY.

(Circuit Court of Appeals, Third Circuit. February 20, 1902.)

No. 18.

**1. AGENCY—CONTRACT—LIABILITY OF PRINCIPAL TO SUBAGENTS.**

A principal cannot be made liable to a subagent appointed by his general agent, where such principal in the contract with his general agent has expressly stipulated that such general agent is to be responsible to the principal for the acts and conduct of his subagents, and that in no case and under no circumstances shall the principal be liable for commissions or compensation to such subagents.

**2. SAME—CONSTRUCTION OF CONTRACT.**

By a contract between an insurance company and its general agent, appointed for certain territory, the latter was authorized to appoint or employ all subagents reasonably necessary for the proper transaction of the business contemplated by the contract, "and for the fulfillment of his agreements hereunder." It further provided that the general agent should be directly accountable to the company for all moneys, premiums, etc., belonging to the company, and liable in respect to all acts, doings, and agreements of the subagents, and should pay all salaries, commissions, or compensation earned by them, "and said company shall under no circumstances nor in any manner be liable for the same or any part thereof." *Held*, that a contract made by the general agent in his own

name, appointing a subagent for a definite term, who was required to give bond, and to account to him alone. did not create a contract of agency between the subagent and the company which could be enforced against the latter after the general agent had been removed in accordance with the terms of his own contract.

**3. PLEADING—EFFECT OF ADMISSIONS.**

An admission in an affidavit of defense made by an officer of defendant corporation that plaintiff was appointed a subagent of defendant by its general agent, who had authority to make such appointment, is not inconsistent with the defense that under the contract between defendant and its general agent the authority of the latter was limited to the appointment of subagents subordinate to his own agency, and that the subagency was terminated by the termination of the general agency.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Samuel B. Huey, for plaintiff in error.

John G. Johnson, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. The record brought before us by this writ of error, discloses a suit instituted in the court below by Delbert B. Gray, plaintiff below, defendant in error here, against the Union Casualty & Surety Company, defendant below, plaintiff in error here. The cause of action, as set out in the statement of claim, was the alleged breach of a contract contained in a certain agreement in writing, executed on the 2d day of September, 1893, between David Black, general agent for the Middle states of the Union Casualty & Surety Company, of St. Louis, Mo., and Edward P. Carpenter, Delbert B. Gray and George A. Hincken, partners under the firm name of Carpenter, Gray & Hincken, of Philadelphia. By this agreement, it is alleged, said firm entered into contractual relations with the said company, by which they were to act as its subagents, for a term of five years, in certain territory comprised within eastern Pennsylvania, New Jersey and Delaware, covenanting that they, on the one hand, would perform certain designated services as agents, or subagents, for the said company, in the insurance business; the said company on the other hand, becoming bound that opportunity for the performance of such services should be continued for said term of five years, at and for the compensation stipulated, by way of commissions, in said articles of agreement.

By assignments from his partners, the said Gray became vested with all the rights and responsibilities created by this contract, and has been recognized as standing for said partnership, by the defendant below, throughout this litigation. He will be spoken of hereafter as sole subagent under the contract. The plaintiff below alleged in said suit, and contends here, that a breach of this contract, as construed by him, was made by the defendant below, by refusing to recognize his right to act as agent for said company, for the remainder of the term of five years, after the discharge of David Black, its general agent, from its employment, and by discharging him, Gray. from its service within the term aforesaid. The defendant below, on the other hand, contends, that it was not privy to any contract with

plaintiff below, and that the contract, the breach of which is stated as the cause of action in the said suit, was a contract with David Black, its general agent, and bound him, and not it, by its stipulations and covenants. The parts of the said contract pertinent to our present inquiry, are substantially as follows:

"This agreement made and entered into this second day of September, 1893, by and between David Black, general agent for Middle states of the Union Casualty and Surety Company of St. Louis, Mo., hereinafter designated 'Said General Agent' of New York, party of the first part, and Edward P. Carpenter, Delbert B. Gray and Geo. A. Hincken, partners under the firm name and style of Carpenter, Gray and Hincken, hereinafter designated 'Said Agents,' parties of the second part. It is understood and agreed that the Union Casualty and Surety Company of St. Louis, Mo., will be designated throughout this agreement as 'Said Company.' That upon the terms and conditions, and in consideration of the several covenants and agreements to be kept and performed by said agents, parties of the second part, hereinafter set forth, said general agent, party of the first part, has this day appointed, and does by these presents make, constitute and appoint said parties of the second part agents of said company for the procuring of business for the said company in the following described territory, that is to say: Eastern Pennsylvania, southern New Jersey and Delaware, said territory being more particularly defined in a map filed in each of the offices of the parties to these presents. The term of the agency hereby created, the said agents faithfully performing their duties hereunder, shall be and continue for five years from the date thereof, to wit, until the second day of September, A. D. 1898. Said agents, parties of the second part, are and shall be authorized and empowered, but only upon the terms and conditions and fulfilling the agreements on their part hereinafter set forth, to issue and countersign all descriptions of policies of insurance procured by them within the territory above mentioned which are now or may during said term be issued by said company and to make necessary and proper indorsements upon the same, provided that the insurance of all such policies and all indorsements made thereon shall be subject to the approval of said general agent, and said agents, keeping and performing their said agreements, shall be authorized as such, during said term to collect, for the benefit of said general agent, the premiums paid upon and for all policies issued by them, said agents, and to give proper receipts for the same. In consideration of, and as full compensation for all services rendered and disbursements made by them under and pursuant to this contract during said term, said party of the first part, agrees to allow the said agents commissions on all gross premiums, by the said agents, collected during said term upon policies for the several kinds or classes of insurance procured and issued by said agents during said term, which commissions may be deducted by said agents from said premiums collected by them at the following rates or percentage thereon respectively, that is to say: * * * Said general agent will from time to time, furnish said agents, for the purposes aforesaid, with such forms of policies of insurance and such manuals as may be requisite for the use of said agents in securing business and procuring the issue of policies of insurance such as herein contemplated, and with such other documents and supplies as said general agent shall deem necessary for the proper transaction by said agents of the business of said company within said territory."

Said Gray agrees that he will make prompt collection of all premiums, and duly account for the same to the said general agent, and keep books and accounts showing all premiums collected by him "subject to full and convenient inspection by said general agent whenever required." He also agrees that he, and all his subagents employed by him, will make to the said general agent, from day to day, true and complete daily reports of all policies issued, etc., and on the 1st day of each month, will render to him, the general agent, a true

and complete statement, in form such as the party of the first part may require, showing the number, description and amount of all policies written or issued by authority of said Gray during the preceding month, and that on the 12th day of each month, will pay or remit to the said general agent, the balance of all premiums collected by him during the last preceding month. By a provision, identical in language with one contained in the contract between said general agent and the said company, which will hereafter be referred to, it is stipulated, that the said Gray may appoint and employ, subject to the rules and regulations prescribed by said general agent, any and all subagents reasonably necessary for the proper transaction of the business contemplated by the contract, and for the fulfillment of his agreement thereunder; but it is expressly understood and agreed, that said Gray shall be directly accountable to the said general agent, for all policies issued and moneys collected under the provisions of said contract, and shall be directly liable to said general agent, for the acts and doings of said subagents in and about the transaction of said business, and that all salaries and commissions and compensation earned by such subagents, shall be paid by said Gray, and that "said general agent shall, under no circumstances, nor in any manner, be liable for the same or any part thereof." Said agreement further provides that, in default of the performance by said Gray, of the conditions and agreements in said contract set forth, the "said general agent, party of the first part, shall have the right, without further demand or notice, to cancel the contract and terminate the agency hereby created." And at the close, it is stipulated as follows:

"It is a further expressed condition of this contract that said agents, parties of the second part, shall and they hereby jointly and severally agree that they will within thirty days from the date hereof deliver to said general agent at his office in New York a bond in the penal sum of ($5,000) five thousand dollars, duly executed by said agents and by the American Surety Company or other good and sufficient surety or sureties, and containing such conditions for the payment of said penal sum to said party of the first part as obligee therein as shall be satisfactory to the said general agent, party of the first part," etc.

To this contention of the defendant company, that the contract sued upon was res inter alios acta, the plaintiff below replies, that the contract was made by Black, as general agent of the company, by authority and in behalf of the said company, and created such contractual relations between the said plaintiff below and said company, as to make the stipulations as to term of service and compensation, obligatory upon said company. In support of his position, he refers to the provision of the contract between the said company and its general agent, Black, with reference to the prospective appointment by Black, of subagents. This contract, which was dated September 2, 1893, both in form and general provisions, is almost identical with that between Black and the plaintiff below, as above set forth. The authorization referred to and relied upon by plaintiff, is contained in the beginning of the following paragraph of this agreement:

"Such agent is authorized as such to appoint and employ, within and for the territory aforesaid, but subject always to such rules and regulations as may be prescribed in respect thereof by said company, any and all subagents,

subordinates, and employés reasonably necessary for the proper transaction of the business contemplated by this contract and for the fulfillment of his agreements hereunder; but it is expressly understood and agreed that said agent, party of the second part, is and shall be directly accountable to, and shall and will on demand therefor, at all times account to and with said company for all moneys, premiums, policies, supplies, documents, and other property belonging to said company, or for or in respect of which it may from time to time be entitled to an account under the provisions of this contract, and shall be directly liable to this company for and in respect of all acts, doings and agreements of any and all solicitors, agents, special agents, canvassers, clerks, and other employés appointed or employed by said agent party of the second part, in or about the transaction of said business, but all salaries, commissions and compensations of any kind earned by or which may become payable to such solicitors, special agents, canvassers, clerks, or employés, or either of them, shall be paid by said agent, party of the second part, and said company shall under no circumstances nor in any manner be liable for the same or any part thereof."

As we have before said, it is identical in language with a corresponding paragraph in the articles of agreement, by which Black appoints Gray his subagent. In addition to this authorization of the appointment of subagents, the plaintiff below refers to testimony tending to show, that his contract with the general agent was due to his application made directly to the company, and to correspondence with one Huff, general manager of said company; that during the time that he was acting as subagent, he had numerous letters directly from the office of the company in St. Louis, and that after the termination of Black's service with the company, he was recognized for a period of nearly three months as an agent by the executive officers of the company. We are also referred by counsel of the said plaintiff below, to the following language in the affidavit of defense, made in this cause by the secretary of the said company:—

"It is true, that on the 2nd day of September, 1893, the said defendant, acting by David Black, its then general agent for the Middle states, did appoint the plaintiff, Delbert B. Gray, Edward P. Carpenter and George A. Hincken, partners trading under the firm name of Carpenter, Gray and Hincken, subagents for the company, with an office in Philadelphia, and that the said David Black, general agent as aforesaid, was at that time duly authorized to make such appointments."

The plaintiff, as a witness, testified that he had always considered the contract he had made with Black as one made with the company, and that he had a right to hold the said company to the performance of the agreements in said contract contained, for a period of five years, and that the obligations of the said company in that behalf did not cease with the termination of its contract with Black, and that he so told the president of the company, in an interview had with him after Black's discharge. Ellerbe, president of the company, on the other hand, denies this statement of the plaintiff below, and says that the continuance of the plaintiff below as an agent of the company, after Black's discharge, was provisional only, and until other arrangements could be made; that after the notification from him as president of the company, dated July 31, 1894, that the contract with Black, as general agent, had terminated, and directing him to make all remittances for premiums collected to Huff, general superintendent, in New York, and to put his accounts in shape for exam-

ination, had been acknowledged by plaintiff below, in a letter dated August 1, 1894, the said plaintiff below, under date of August 2d, wrote to said Huff, as general manager of the Union Casualty & Surety Co., as follows:

"Dear Sir:—We should like very much, now that our arrangements with David Black & Co. are terminated, to have the agency direct, the same to include all of Pennsylvania, inasmuch as Pittsburgh and Clearfield county are closely identical with Philadelphia in all the leading industries and manufactures. Yours very truly, D. B. Gray & Co., General Agents."

Ellerbe also testifies that, neither at the final interviews in the last of October, in which he says an account was stated between the said plaintiff below and the company, and in which finally the said plaintiff below was informed that his services were dispensed with, did he, the said plaintiff below, nor at any other time, claim that his contract made with Black continued with the company after Black's discharge. Upon this state of the testimony, the case went to the jury under the charge of the court. The exceptions to the said charge are somewhat meagre, but are sufficient to support such of the assignments of error as, in our view of the case are important.

The construction of the contract sued upon, was especially the function of the court, and the charge of the learned judge in that respect, is properly before us for review, upon the exceptions taken by the defendant to the court's refusal to answer certain of its requests to charge, and the assignments of error founded thereupon. It is perfectly plain that, if the suit of the plaintiff below can be maintained against the defendant company below, it is because the said company was a privy to the written contract, by which Black constituted Gray a subagent, thereby entering into a contractual relation with the said Gray as to the term of his employment, and as to the affording him opportunity to earn, and the allowance of, his commissions. The principal question before us is, whether this is or is not a correct interpretation of the said contract. The interpretation of the contract, as made by the learned judge of the court below, is comprised in the following statements made by him in his charge to the jury:

"Let us see what was the relation between these parties at the beginning. As you have heard, a man named David Black was appointed the general agent for this company for certain territory, the Middle states. He was given power by his contract to appoint subagents within that territory. These subagents, while sustaining a certain relation to him, were of course agents for a certain territory of the Union Casualty and Surety Company of St. Louis. Black's own appointment was for the purpose of obtaining business for the company, and these appointments he was authorized to make were for the same purpose. He, and those he might appoint under him, were all engaged in the same business, to further the business and advance the interests of the company, and to get business for it. His appointment was to last for five years. After his appointment was made he appointed a firm of which the plaintiff was a member, and about which I need not specially concern myself—we will treat it as an appointment of Mr. Gray himself, because the rights which the other members of the firm got under that appointment afterwards became vested in Mr. Gray, and there is no occasion to distinguish between the firm and Mr. Gray himself—we will consider the appointment as having been made of Mr. Gray himself, for convenience sake. Black appointed Gray, and by one of the provisions of the contract it was

to last for a term of five years. It is at that point that the first dispute arises. Early in August, I think, of the following year, Black was dismissed from the service of the company, and we shall assume, since we know nothing to the contrary, that he was properly dismissed. One of the contentions of the defendant is that by the dismissal of Black, the severance of his relations with the company, Gray's relation with the company was also severed; that his contract made with Black, as general agent of the company, fell at the same time that Black's own contract was terminated by the company's action. I instruct you that was not the case; that when Black made his contract with Gray, and appointed him for a term of five years, he had power to make that appointment. He himself was entitled to serve the company as general agent for five years, subject of course to their right to dismiss him for cause, and when he made the contract with Gray, he had the power to make it, and to make it for five years; and we instruct you, therefore, that the fact that the company dismissed Black did not operate to dismiss Gray from the company's service and put an end to his relations with them. He had a valid contract which was to last for five years, unless sooner terminated for good and sufficient reason."

We are compelled to dissent from this construction of the contract sued upon. On its face, the contract was signed and sealed by David Black individually, and not in the name of the company defendant, nor on its behalf. It is true, that in the caption of the articles of agreement, Black is described as general agent for the Middle states of the Union Casualty & Surety Company of St. Louis, and is designated throughout the subsequent provisions of the contract as "said general agent." This, however, was a proper and, considering the subject-matter of the contract, a natural, designatio personæ. The business in which Gray was to be employed was that of assisting Black in his business as general agent of the Casualty Company, by soliciting insurances, issuing policies and collecting premiums for him, and under his supervision. It is true, of course, that this business was for the benefit of the company, and that the premiums collected, less the commissions of himself and Black, belonged to the company, and he was in certain respects a subagent of the company, as Black had been expressly authorized in his contract with the company to appoint such subagents. But this classification of his position, as that of subagent, does not necessarily bring him into contractual relations with the company, without express stipulation to that effect. The authority to Black, in his contract with the company, to appoint subagents, and relied upon by plaintiff below, as making said company privy to his contract with Black, cannot, without straining the language used, from its natural meaning, have the effect contended for. Black was about to engage as general agent of the company for the Middle states, and it was obvious, from the extent of territory over which he was to preside, that the work of procuring and conducting the business he had undertaken, could not be transacted personally by him over so extensive a territory. This fact being obvious, the parties to the contract, by the clause in question, recognized the necessity that a general agent would be under, of calling to his assistance subagents, who could act under his direction and control. He, however, by the terms of the contract and of its provisions, was the general agent for the whole territory. He was not required to appoint any particular number, or indeed any, subagents, unless he chose so to do. If such should be appointed, they were to be selected and

appointed by him, absolutely, and what he should do by them, he would be doing by himself. By the contract, he alone was made responsible to the company, and was expressly accountable to it for the acts and conduct of his subagents. It was evidently a recognition of this well-settled mode of transacting the business of a general agency, that caused the authorization to appoint subagents to be inserted in the contract. Otherwise, there might be a question as to the company's being liable upon the contracts made for Black by such subagents. This authority to appoint them for the purposes mentioned, removed all question as to the company's liability for contracts so made. So far, and in this qualified sense as to third parties holding policies of the company, it may be said to have been privy to the contract between Black and Gray. That is, the company was bound thereby to recognize policies duly issued within the scope of his authority, by Black, or his subagents, as liabilities of the company.

The use of subagents by Black, in the transaction of his business as general agent, having thus been sanctioned in the contract appointing him, we find nothing therein which required, or even seemed to contemplate, that they should be appointed in the name or on behalf of the said company. If there had been such requirement, the contract between Black and Gray should have been in different form. It should, on its face, have purported to be a contract made by the company, or on behalf of the company, through David Black, as its agent, and should have been signed and sealed for the said company by the said Black. This, however, is not the case. It is true that, in some cases, where the contract does not purport, on its face, to be so made, evidence dehors the contract itself, may establish the fact that it was made on behalf of an undisclosed principal. In such cases, however, the evidence for that purpose must be clear, and the provisions of the contract must not be inconsistent therewith. In his contract with the said company, Black was expressly made responsible for all moneys collected, or acts performed, by subagents, and there is not a word in the contract from which it could be inferred that he could relieve himself from such responsibility. Consistently with his contract with the company, as we understand it, the contract with Gray was signed and sealed by David Black, individually, and not in the name of the company, nor on its behalf. The obligations it imposed upon Gray were obligations to Black, although their due performance was in furtherance of what he had contracted with the company to do and perform. Gray worked for him and was compensated, therefor, by him. It was expressly for the benefit of Black, that Gray was authorized, under his contract, to collect the commissions allowed to the general agent by the company, and it was expressly for the benefit of Black, that Gray was authorized by his contract here sued upon, "to collect the premiums paid upon and for all policies issued by him," and for which Black was accountable to the company. It was to Black that Gray bound himself by the terms of his contract to render, on the 1st day of each month, a statement of moneys received, and on the 12th of the same month, to pay or remit the same. It was to Black that Gray, by his contract, bound himself to be liable, for any acts of his employés or subagents, and it is Black that is ex-

empted from liability for the compensation of any of Gray's employés. It is also provided that the general agent, Black,—not the company—shall have power to terminate the agreement; and the bond required to be given by Gray, was to be given to the general agent—not the company—and the general agent, and not the company, had the right to cancel the contract, in default of the giving of such bond. All the covenants in Gray's favor also, were to be done and performed by Black, and not by the company. And so we find that, in the long contract sued upon, all the stipulations or covenants therein contained, are expressly mutual ones between Black, the general agent, and Gray. No one of them purports to have been made for or on behalf of the company, and there is nothing in the character of any one of them, that is not appropriate to an individual contract between the general agent and Gray, or that does not concern individual interests of the said general agent, which it was natural for him to protect, and the duties imposed upon Gray are such as he appropriately should perform for that purpose.

In considering the contract thus clear and unequivocal upon its face, the evidence disclosed in the record, as to correspondence between Gray and the executive officers of the company, and the conduct of such company in dealing with him after the discharge of the general agent, even if it were more pointed than it is, is totally irrelevant. That after the discharge of the general agent, the company should have received from Gray the premiums already collected by him, or that it even should have allowed him, for the time being, to continue his work as subagent, cannot alter his status under his contract with Black, as Black's subagent. The most that could be inferred or result from such dealings of the company with Gray, after the discharge of Black, is, that a new contract might be implied therefrom, covering the situation in which Gray and the company found themselves after Black's discharge. Under such implied contract, Gray probably became the agent for the time being of the company. As no term of service attached thereto, it was a contract terminable at the will of either party, and with which, in this case, we have nothing to do.

So far, we have considered the contract sued upon, and the case made in support of it by the counsel for the plaintiff below, as they have presented it. We have not called attention to a carefully worded provision, contained in the paragraph already quoted from the contract between the company and its general agent, by which said company, ex industria, by express terms, exempts itself from all liability for compensation to the subagents, who may be appointed by its general agent. It logically relates to this part of the authorization clause. After providing that the said general agent shall be directly liable to the company "for and in respect of all acts, doings and agreements of any and all solicitors, agents, special agents, canvassers, clerks, and other employés appointed or employed by said agent, party of the second part, in or about the transaction of said business," it proceeds as follows:—

"But all salaries, commissions and compensation of any kind, earned by, or which may become payable to, such solicitors, subagents, canvassers.

clerks, or employés, or either of them, shall be paid by said agent, party of the second part, and said company shall, under no circumstances, nor in any manner, be liable for the same or any part thereof."

This express stipulation for exemption must be taken in connection with the authorization to appoint subagents, upon which plaintiff below so much relies. Out of abundant caution, apparently, it clears up all doubt, if any could have existed without it, that whatever contractual relations may, under certain circumstances, exist between a principal and subagents appointed by his general agent, none such as those here guarded against, can exist in this case. It makes perfectly clear, what we think was clear independently of it, that the contract of subagent Gray, with the general agent, Black, expired with the termination of the latter's contract with the company, and the relations to the business of the company on Gray's part, which commenced with and sprang from his contract with the general agent, ceased when the latter's general agency ceased. What implication of a contractual relation in this respect, between the company and a subagent appointed by Black, can exist, in the face of this express provision forbidding it? Any business connection thereafter existing between Gray and the company must depend, as we have said, upon authority implied from the conduct of the parties, subsequent to the discharge of Black, and terminable at the will of either. The suit in this case is ex contractu, and the defendant, it is contended, is privy to the written contract upon which it is founded. Whatever argument has been made for the contention of plaintiff below, apart from this exemption clause, none, it seems to us, can be made when it is taken into consideration. It would be doing violence to the law of the contract, if it were ignored. In view of this clause, it is hardly worth while to discuss the authorities and cases cited by counsel. We have examined them all, both text-books and cases, and find no support for the proposition, that a principal can be made liable to a subagent, appointed by his general agent, where such principal, in his contract with his general agent, has expressly stipulated that such general agent is to be responsible to the principal for the acts and conduct of his subagents, and that in no case, and under no circumstances, shall the principal be liable for commissions or compensation to such subagents. In the view we take of the contract upon which this suit purports to be. founded, the interpretation put thereupon by the learned judge of the court below, in his charge to the jury, was erroneous, and we cannot, therefore, agree with his instruction to the jury, founded upon that interpretation, which was as follows:—

"And we instruct you, therefore, that the fact that the company dismissed Black did not operate to dismiss Gray from the company's service, and put an end to his relations with them. He had a valid contract which was to last for five years, unless sooner terminated for good and sufficient reason."

On the contrary, we think he should have instructed the jury, that the contract sued upon, taken in connection with the clauses quoted from the contract between the company and its general agent, was not a contract between the defendant company and the plaintiff, and no liability, on the part of the said defendant to the said plaintiff,

was created thereby. Such an instruction as this, which we think should have been given, would be equivalent to a binding instruction to find a verdict for the defendant.

Counsel for plaintiff below make a point of the statement in the affidavit of defense, sworn to by the secretary of the company, and duly filed, that it was true that, on the 2d day of September, 1893, the said defendant, acting by David Black, its then general agent for the Middle states, did appoint the plaintiff and his partners, subagents for the company, with an office in Philadelphia, and that the said David Black, general agent as aforesaid, was at that time duly authorized to make such appointments. How far the admission of a fact stated in an affidavit of defense could be used against the defendant in a trial upon the issues subsequently formed by the pleadings, may be a question. In the present case, the affidavit containing the allegation referred to, was made by the secretary of the company, in compliance with the requirements of law, to prevent judgment being had by default against the defendant at the appearance term. The case subsequently went to issue upon the pleas of non assumpsit, payment and set-off, and upon these issues, was tried. The contract sued upon was in writing, and was set out in totidem verbis, by the plaintiff, in his statement of claim. The due interpretation of said contract was the province of the court, as a question of law, and not of the jury, as a question of fact. The statement referred to in the affidavit of defense, made by the secretary of the company, was not a statement of a fact, but an interpretation of the written contract upon which the suit was expressly brought, and, therefore, cannot be used as an admission of fact upon any sound theory, and does not come within the reasoning of the decision of the court, in the case of Bowen v. De Lattre, 6 Whart. 434, referred to by counsel for defendant in error. But be this as it may, the most that can be made of the statement in question, as an admission, is, that Gray was duly appointed by the defendant company, as a subagent of Black. Taking this to be true, it by no means follows, that the company was liable to him as subagent, for his compensation as such, in face of the express condition in his written appointment by Black, that he was to look to Black for payment, and the express condition in the defendant company's authorization of his appointment, that said company should, under no circumstances, nor in any manner, be liable for the said compensation, or any part thereof. Nor does it at all follow, that an admission that Gray held the office of subagent under Black, would give him a tenure of office extending beyond that of Black himself. A subagency cannot rise higher than the general agency to which it is subordinate, and when that general agency ceases to exist, of necessity, no subagency, with reference to it, can continue. If this were not true, we should have the anomalous condition of a subagency with no principal agency in existence, and if Black had so chosen, we might have had, at the termination of his general agency, his whole territory filled with subagents, holding terms of five or more years, which the company would have been powerless, according to the contention of plaintiff below, to terminate or control. If it be true that Gray was appointed subagent of Black, by

the company, still, the appointment must be taken as made subject to the express conditions set out in the letter of appointment, and to the limitations inherent in the nature of the office. These express conditions are, that Black may appoint subagents "for the fulfillment of his agreements" with the company. Here is a clearly defined purpose for the appointment in question. No other and independent purpose can be attached thereto. If the appointment is made by the company, it is made, in order that the subagent may assist Black in transacting the business that he is under contract with the company to perform. The company did not authorize Black to appoint for any definite term, and Black clearly transcended his power of appointment in behalf of the company (conceding that he was acting for the company), by presuming to attach a term to the office of subagent, that might, by possibility, transcend the period of the existence of his own general agency.

Conceding, therefore, for the sake of the argument, that the effect of the statement in the affidavit of defense was conclusive upon the defendant, and that Gray was appointed a subagent of Black, by the defendant company, we are still brought to the same conclusion, that the instruction of the learned judge of the court below to the jury in the premises, was erroneous. The proper construction of the contract should have been, in this regard, directly contrary to that which was given, and above quoted, to wit;—that the appointment of Gray by Black, for a term of five years, was not binding upon the company, and that Gray had no valid contract with the company which was to last for five years, and that when the company dismissed Black for good and sufficient reason, it did operate to dismiss Gray from the company's service, and put an end to his relations with it under his appointment as subagent. Such an interpretation of 'the contract would also have put an end to the suit, and be equivalent to a binding instruction to find for the defendant.

The judgment, therefore, of the court below is reversed.