### TEXAS CO. v. BRICE.

Circuit Court of Appeals, Sixth Circuit.
May 18, 1928.

No. 4909.

**1. Appeal and error ⬦927(7)—In determining propriety of refusal of directed verdict for defendant, appellate court must view evidence in light most favorable to plaintiff.**

In determining propriety of court's refusal to direct verdict for defendant, appellate court must view evidence in light most favorable to plaintiff.

**2. Master and servant ⬦330(3)—Evidence held to show employee of oil company's commission agent injuring plaintiff's husband stood in no privity with oil company but was servant of agent only.**

In action against oil company for damages for alleged negligent killing of plaintiff's husband through negligence of defendant's alleged agent, evidence *held* to show that employee of defendant's commission agent, driving truck across railroad track at time of accident, was not in privity with defendant, but was servant of agent only, and defendant was not responsible for his acts, notwithstanding instructions in defendant's book of rules, dictating details of how agent's work should be carried on and how his drivers should cross railroad track.

**3. Master and servant ⬦301(2)—That oil company furnished its commission agent suggestions for guidance of his employees did not make his employee oil company's agent.**

That defendant oil company furnished information and suggestions to its commission agent for use and guidance of his employees did not make his employee, alleged to have caused death of plaintiff's husband, defendant's agent, where defendant did not itself directly supervise or control any of actions of such employee.

**4. Master and servant ⬦301(2)—Oil company held not estopped to claim driver of truck, having defendant's name thereon, causing injury, was not its agent, but was commission agent's employee.**

Where oil truck, which caused collision with train, resulting in death of plaintiff's husband,

had defendant's name and trade-mark thereon, defendant oil company was not estopped to claim that driver of truck, employed by defendant's commission agent, was not defendant's agent.

**5. Master and servant ⬦301(1)—Tort liability of supposed principal under rule of respondeat superior rests upon fact of agency, not appearance thereof.**

Tort liability of supposed principal, under rule of respondeat superior, rests, not upon appearance of agency, but upon fact of agency.

**6. Principal and agent ⬦24—Existence of agency is question for court, when contract is in writing and there is no dispute regarding acts, etc.**

Existence of agency is question for court, when contract is in writing and there is no dispute or room for disputed inference as to the other documents, correspondence, and acts which might sometimes bear on construction.

**7. Courts ⬦372(3)—Federal court was not obliged to follow state decision on question of agency between truck driver causing injury and defendant.**

Circuit Court of Appeals was not bound to follow state decisions on question regarding existence of agency between driver of truck causing injury to plaintiff's husband, resulting in his death, and defendant.

In Error to the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Action by Mrs. M. M. Brice against the Texas Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

John B. Keeble, of Nashville, Tenn. (J. M. Anderson, of Nashville, Tenn., on the brief), for plaintiff in error.

W. H. Washington and Seth M. Walker, both of Memphis, Tenn. (Thomas N. Greer, of Shelbyville, Tenn., on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge. This is an action by the defendant in error, plaintiff in the court below (hereinafter called the plaintiff), a resident citizen of Tennessee, as administratrix of the estate of her husband, Mason M. Brice, deceased, to recover from the plaintiff in error, defendant below (hereinafter called the defendant), a Texas corporation, damages for the alleged negligent killing of said deceased by said defendant, through the negligence of an alleged agent or servant of the defendant.

It is undisputed that the death of plaintiff's decedent, which occurred while he was acting as fireman in the cab of a fast passenger train locomotive, resulted from injuries

received in a collision between said train and a motortruck, carrying several hundred gallons of gasoline and oil, operated by a driver claimed to have been the representative of the defendant, and that such collision was caused by the negligence of said driver. The only disputed question involved was, and is, whether the defendant is liable for such negligence. At the conclusion of the proofs, the defendant made a motion for a directed verdict in its favor, on the ground that there was no evidence tending to show the existence of such relation between the defendant and said driver as would make the former liable for the negligence of the latter. The trial judge denied this motion, and submitted this question of liability to the jury, which returned a verdict for the plaintiff in the sum of $32,000, and, to review the judgment entered on such verdict, the defendant has duly brought the case to this court by writ of error.

[1] The first assignment of error is based on the refusal of the trial court, to which exception was duly taken by the defendant, to direct a verdict for the defendant on the ground just mentioned. With respect to the subject-matter of this assignment, the evidence, viewed, as it must be, in the light most favorable to the plaintiff, showed the following material facts:

In July, 1925, defendant was engaged in selling gasoline and oil in various parts of the United States, including the state of Tennessee, through local oil depots in charge of selling agents, of whom it had two classes—so-called salaried agents, receiving a fixed, regular salary, and so-called commission agents, receiving a commission dependent on the amount of sales made by them. Both classes of such agents were subject to general supervision and control by the defendant, the salaried agents to a somewhat greater extent than the commission agents, and both had, with the knowledge and consent of the defendant, servants assisting them, including the drivers of motortrucks used in delivering the gasoline and oil so sold. These drivers and other servants were employed, discharged, paid, and directly controlled, in connection with the salaried agents, by the defendant, and, with respect to the commission agents, by such commission agents themselves, although even as to the latter agents the defendant prescribed certain conditions and requirements to be observed by such commission agents in their regulation of their own servants. On July 6, 1925, the defendant made a written contract with one Hutton, by which he was appointed its commission agent for the sale of its products in the town of Shelbyville, in Tennessee. The only language in such contract which related to the employment of agents or servants to assist Hutton was contained in the following provision thereof: "If a commission agent, you will accept full responsibility for, and indemnify the company against, all acts or omissions of your agents, employees, and servants." Hutton employed a helper, one Nelson, to assist him about the oil station and to drive a motortruck owned by Hutton and used by him in delivering the defendant's products which he sold. Nelson was hired, paid, and directed by Hutton alone, and the defendant took no part in employing, paying, or directing him, although it knew of, and consented to, his employment by Hutton. The truck referred to was owned by Hutton, although the name and trade-mark of the defendant had been painted on its sides, as well as on the oil station and the tanks and other equipment used in connection therewith. The current state motor license of the truck had been paid for by Hutton individually, but issued in the name of defendant, at the request (not shown to have been authorized by defendant) of an employee of Hutton. The defendant had paid for, and held, the current state privilege licenses required for the operation of the oil depot. On July 17, 1925, while Nelson was driving the truck along the public highway, to deliver a quantity of gasoline which had been ordered by a customer, but which still belonged to defendant, he negligently (as the jury on sufficient evidence determined) drove such truck upon a railroad track in front of the rapidly approaching train already mentioned, with the aforementioned results.

We think it unnecessary to decide or consider whether Hutton was, as to the defendant, an agent, as claimed by plaintiff, or an independent contractor, as claimed by the defendant, although, of course, the question of defendant's status as against this particular claim is not to be controlled by any matter of nomenclature. Assuming, as we may do for the purposes of this opinion, that his relation to the defendant was that of an agent to a principal, it by no means follows that the relation between his employee, whose negligence caused the death of the plaintiff's decedent, and the defendant, was such as to make the defendant liable for such negligence. The test as to such liability must, of course, be whether the defendant either expressly or impliedly authorized Hutton to employ this driver as the agent or servant of the defendant. We have searched the entire

record in vain for any evidence which would warrant a finding or proper inference of any such authority. It is obviously not enough that the jury might have properly found that the defendant knew of, and consented to, the employment of such driver by its said agent (if Hutton was its agent). It is, indeed, sometimes loosely stated in text-books and even in opinions by courts that consent by a principal that his agent may employ agents makes the agents so employed the subagents of the principal, so as to fasten upon him liability for their acts within the scope of their employment. That, however, is too broad a statement of the applicable rule, because it overlooks the important distinction between a principal's consent, on the one hand, that his agent may employ an agent or servant on behalf of the principal, and the principal's mere consent, on the other hand, that the agent may employ his own agent or servant, who may even assist him in performing his duties to said principal, but who remains, nevertheless, the representative of only his immediate employer, and stands in no relation to the principal of such employer. Prof. Mechem, in his admirable treatise on the law of agency, has in the following language well pointed out the true principles involved (pages 240, 242, 1447):

"The principal may, of course, authorize the employment of the subagent on his account and as his agent· and thus create privity of contract between them. But he may also do less. He may occupy a middle ground. He may clearly be willing to consent that his agent may perform the duty through a substitute employed at *the agent's* risk and expense, when he would not be willing, at *his own* risk and expense, to have such a substitute employed.

"Thus a principal who has put goods for sale into the hands of an agent—the agent having no power to delegate his authority, and it being perhaps a wrongful act on the part of the agent to intrust them to any one else and a wrongful act on the part of the latter to exercise any control over them— may be willing that his agent may employ a subagent so far that the intrusting of the goods by the agent to the subagent, or the exercise of control over them by the latter, or the latter's sale of them upon the terms prescribed to the agent, may all be acts done with the principal's consent, and yet not done by a person who stands in any contractual relations to the principal, or who can look to the principal for compensation, or for whose promises or conduct the principal would be responsible to third persons.

* * * The principal may consent to the employment of subagents on such terms as please him, and, where he has consented only upon the express or implied condition that the subagent shall not be deemed his agent, that condition, as between the parties, must control. * * * In order to justify the inference of an employment as the principal's agent, the circumstances must be such as to reasonably warrant the conclusion that the principal has taken the subagent as his agent, thereby ordinarily becoming liable for his compensation, assuming responsibility for his conduct, accepting the subagent's responsibility to him, and releasing the original agent from such responsibility."

[2] We think the present record barren of any evidence warranting an inference that the defendant consented or intended that the truck driver here involved, whom it neither employed, paid, nor directed, and for whose negligence it had expressly disclaimed liability in its contract with the employer of such driver, should be its own agent or servant. We think that, on the contrary, the evidence affirmatively indicates that it was understood by the defendant, by its commission agent, and by said driver, that the latter was the servant of only the man by whom he was employed, that he stood in no privity with the defendant, and that for his acts the defendant was not responsible. Sams v. Arthur, 135 S. C. 123, 133 S. E. 205; Barnard v. Coffin, 141 Mass. 37, 6 N. E. 364, 55 Am. Rep. 443; National Bank of the Republic v. Old Town Bank of Baltimore, 112 F. 726 (C. C. A. 7); Union Casualty & Surety Co. v. Gray, 114 F. 422 (C. C. A. 3).

Nor do we overlook the instructions found in defendant's book of rules, dictating details of how Hutton's work was to be carried on, reaching even the specific matter of how his drivers should cross the railroad track. To give force to these things is to overlook the clear facts. Defendant did not hire Nelson, or pay him, or become responsible for his pay, or have the power to discharge him, or· the power to tell him how to do his work. All these things were for Hutton. Defendant could enforce its regulations only through Hutton and through the probability that he would lose his agency if he did not compel his agent to respect the wishes of his principal. The question is whether the power of control over the subagent is expressly or impliedly given to the alleged principal.

[3] Neither the fact that the defendant furnished information and suggestions to its commission agent for the use and guidance of his employees, nor the conduct of the de-

fendant in prescribing rules and instructions governing the manner in which such commission agent should regulate and direct such employees, can affect the situation where, as here, it is apparent that the defendant did not itself directly supervise or control any of the actions of said employees. The truck drivers and other servants in the employ of this commission agent were in the possession of, and were handling, the gasoline, oil, and other property of the defendant, and were in a position, with respect to such property, where their conduct relative thereto might cause the defendant serious damage and injury in the loss or destruction of such property. It was therefore natural and reasonable that the defendant should wish to impose and insist upon rules and regulations designed for the protection of the rights and interests of the defendant in that connection; and the issuance of instructions looking to that end cannot be regarded as inconsistent with the absence of such a relation between the defendant and such employees as would make the former liable for the acts of the latter.

Plaintiff relies upon this same clause just referred to—that by which Hutton agreed to indemnify defendant against "all acts or omissions" of agents like Nelson—as supporting an inference that defendant was to be liable to third parties for the negligence of Nelson; else, it is said, there would be no occasion to "indemnify." If this clause could refer only to claims by third parties for torts, the inference might be plausible; but it may well refer to, and be fully satisfied by reference to, injuries to defendant's property intrusted to Hutton, or even to acts which might mislead third parties to their prejudice. Hence the presence of this clause is not inconsistent with our conclusion.

[4] It is clear that the presence of the defendant's name and trade-mark upon the truck referred to in no way misled or prejudiced plaintiff's decedent; and there is therefore no room here for the application of any principle of estoppel which would form the basis of liability to the plaintiff on the part of the defendant on that ground. Goble v. American R. Express Co., 124 S. C. 19, 115 S. E. 900; Jung v. New Orleans Railway & Light Co., 145 La. 727, 82 So. 870; Gulf Refining Co. v. Harris, 30 Ga. App. 240, 117 S. E. 274.

[5] The tort liability of a supposed principal under the rule of respondeat superior rests, not upon the appearance of agency, but upon the fact; and hence all decisions involving a holding out of authority as affecting liability for contracts or frauds are not pertinent.

[6] The existence of agency may often be a question of fact requiring submission to the jury; not so when the contract is in writing and there is no dispute or room for disputed inference as to the other documents, correspondence, and acts which might sometimes bear upon construction.

[7] We have not overlooked, but have carefully examined, the very numerous authorities cited by plaintiff. In some of them, like Singer v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440, and Standard v. Parkinson (C. C. A. 8) 152 F. 681, the injury had been caused by the very person who had contracted with the defendant, and the question was whether the contract was one of agency or one giving independent status. The distinction between a tort by an agent and one by a subagent was not involved. In no one of them did it appear that, by contract between the agent and the alleged principal, the subagents had been expressly made the agents of the agent and not of the principal, or that the agent assumed to the principal all responsibility for the acts of these subagents. Lacking such express provision, it may often be proper to infer, as some of these cited cases do, that there is privity between the principal and the subagent; not so when "the status of each party is fixed by the unmistakable word." Atwell, D. J., Associated Ind. Ins. Co. v. Ellis (D. C.) 16 F.(2d) 464, 470, affirmed (C. C. A. 5) 24 F.(2d) 809. If the late Tennessee case, Gulf Co. v. Huffman, 155 Tenn. 580, 297 S. W. 199, should be considered an exception, of which we are not sure, we could hardly follow it; and, upon a question of general law like this, we are not under obligation to follow state decisions. B. & O. R. Co. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772; Taxicab Co. v. Taxicab Co. (April 9, 1928) 48 S. Ct. 404, 72 L. Ed. ——.

It results that the trial court erred in denying defendant's motion for a directed verdict, and the judgment must therefore be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.