184 So. 560

**ARKANSAS FUEL OIL CO. v. NATIONAL SURETY CORPORATION et al.**

No. 34767.

June 27, 1938.

On Rehearing Oct. 31, 1938.

Blanchard, Goldstein, Walker & O'Quin, Robert Roberts, Jr., and George Conger, all of Shreveport, for appellant Arkansas Fuel Oil Co.

L. Austin Fontenot and L. Austin Fontenot, Jr., both of Opelousas, for appellee Mel Dietlein.

Curtis, Hall & Foster, of New Orleans, and Dubuisson & Dubuisson, of Opelousas, for appellee National Surety Corporation.

ROGERS, Justice.

This is an appeal from a judgment sustaining exceptions of no cause of action filed to the petition by Mel Dietlein and the National Surety Corporation. The suit was brought by the Arkansas Fuel Oil Company, as assignee of the Louisiana Oil Refining Corporation, against Mel Dietlein, Alfred Perry and the National Surety Corporation, as the assumer of a certain primary blanket fidelity bond issued by the National Surety Company of New York, covering the employees of the Louisiana Oil Refining Corporation, the assignor of the Arkansas Fuel Oil Company, for an alleged shortage of $2,077.14 in the funds of plaintiff's bulk sales station in the city of Opelousas. Alfred Perry could not be found for service of citation and no appearance was made for him in the suit.

The exception of no cause of action filed by the National Surety Corporation is predicated on the contention that the petition affirmatively shows that the shortage in the funds of plaintiff's bulk sales station was caused by certain fraudulent and dishonest acts of Alfred Perry, and that the allegations of the petition and the recitals of the exhibits attached thereto disclose that Perry was not an employee of plaintiff within the terms of the bond, and, hence, no liability for the alleged shortage attaches to the defendant surety company.

The substantial grounds of plaintiff's action appear to be set forth in Article IV of

its original petition as amended by its supplemental petition, reading as follows:

"Petitioner represents that while ·the said primary blanket fidelity bond was in full force and effect, said Mel Dietlein and said Alfred Perry were employees of the Louisiana Oil Refining Corporation, at its storage plant and warehouse at Opelousas, St. Landry Parish, Louisiana, and known as a bulk sales station from which gasoline, oil and other petroleum products were sold and distributed at wholesale in the City of Opelousas, Louisiana, and adjacent territory; that the said Mel Dietlein was employed in the capacity of branch manager and the said Alfred Perry was employed in the capacity of clerk, helper and truck driver by the said Louisiana Oil Refining Corporation at its said station; that it was provided in the agreement, photostatic copy of which is annexed for reference only, and marked Exhibit 'C', between the Louisiana Oil Refining Corporation and Mel Dietlein, that said Dietlein, as branch manager, would be responsible for all stocks, equipment and funds coming into his possession and liable also for any shortage or shortages of stock, equipment, supplies or funds which might develop from periodical audits made by the said employer; that while the said Mel Dietlein and the said Alfred Perry were both employees of the Louisiana Oil Refining Corporation, and while the said primary blanket fidelity bond of the said surety company was in full force and effect, through an audit conducted by the employees of the Louisiana Oil Refining Corporation, a shortage in the stocks, accounts and cash of the said Opelousas bulk station of the employer was discovered and amounting to the total sum of Two Thousand Seventy-seven and 14/100 ($2,077.14) Dollars, as will be shown on the trial hereof; that said shortage was brought about by the said Perry's systematically making sales for cash to various persons, unknown to petitioner, and reporting such sales to petitioner as having been made on credit to persons to whom said Perry was authorized by petitioner to make sales on credit. That upon petitioner's insistence that the said Perry and Dietlein make collections of the false balances thus shown to be due by such authorized customers of petitioner, the said Perry would make remittances to petitioner in most cases, but the funds thus remitted were obtained by engaging again in the same practice of making false charges to authorized credit customers.

"Petitioner alleges on information and belief that the course of wrongful conduct hereinabove described was begun by the said Perry at least as early as February 28th, 1934, and continued steadily until the time of its discovery on February 12th, 1936, as hereinafter alleged in detail. That the entire amount of the shortage, hereinabove described, accrued through false and fraudulent reports and invoices, and through misapplication of funds collected belonging to petitioner, and through embezzlement of monies and goods committed by petitioner to the care of said Dietlein and Perry, all said wrongful acts having taken place during the time between February 28th, 1934, and February 12th,

1936; that said shortage was discovered by the employer on February 12th, 1936, on which date said Alfred Perry confessed and acknowledged and assumed full and sole responsibility for the said shortage in the stock, accounts and cash, and gave to the employees of the Louisiana Oil Refining Corporation his written statement sworn to before a Notary Public on said date; that said shortage within the meaning and intendment of said primary blanket fidelity bond amounts to larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication and to fraudulent and dishonest act or acts committed by the employee or employees of the said employer."

■ If the Branch Manager's Commission Agreement contained nothing further than is alleged in the above article of plaintiff's petition, it is possible that for the purpose of the surety's exception the allegations of the article would be sufficient to constitute Perry an employee of the Louisiana Oil Refining Corporation. But in addition to what is set forth in plaintiff's petition, the branch manager's agreement provides, among other things, that Dietlein shall operate the bulk station of the Louisiana Oil Refining Corporation "upon the terms and conditions hereinafter set forth, subject to such rules and regulations as the Corporation (employer) may announce from time to time;" that he shall devote his entire time and energy to the employer's business; that he "shall furnish adequate delivery equipment, including trucks, etc., satisfactory to the Corporation;" that he shall pay all operating expenses, including heat, light, power, water, telephone, etc., and carry adequate insurance of every kind "considered advisable by the Corporation;" and that "The Branch Manager (Dietlein) shall maintain an adequate and competent force, said force to meet the approval of the Corporation, it being understood that the Branch Manager (Dietlein) shall pay all salaries and expenses of such force."

The allegations of the petition when read in connection with the recitals in the branch manager's contract plainly show that the only person with whom the Louisiana Oil Refining Corporation had contractual relations was Dietlein, the branch manager. Notwithstanding the allegations of the petition to the contrary, the Louisiana Oil Refining Corporation had no contract whatever with Alfred Perry. Under his contract with the Louisiana Oil Refining Corporation, Dietlein was obligated to operate the Corporation's bulk sales station at Opelousas and to maintain and pay the force required for that purpose. And it is clear that Perry was a member of the force employed by Dietlein under the provisions of his agreement with the Louisiana Oil Refining Corporation.

■ The fact that Perry was required to "meet the approval" of the Louisiana Oil Refining Corporation did not make him an employee of the corporation within the terms and intendment of the bond herein sued on. Under Section A, paragraph 2, of the bond, "employees" thereunder are defined as follows: "all natural persons * * * who, on the effective date of this bond, are in the regular service of the

Employer in the ordinary course of Employer's business, and who are compensated by salary, wages, and/or commission, and whom the Employer has the right to govern and direct at all times in the performance of such service * * *."

Under the contract between the Louisiana Oil Refining Corporation and Dietlein, the corporation had no right to direct Dietlein whom to employ. Its only right concerning the force employed to operate its station was a right of rejection, not a right of selection. It could tell Dietlein whom he must not employ, but not whom he must employ. The Louisiana Oil Refining Corporation was not responsible for Perry's compensation and it had no control over his actions. The mere fact that the employment of Perry by Dietlein was required to meet the approval of the corporation, just as the equipment used by Dietlein and many other things connected with the operation of the station had to be "satisfactory to the corporation," was not sufficient to constitute Perry an employee of the corporation, under the definition in the bond of a person "whom the Employer has the right to govern and direct at all times."

We do not find that the cases cited and discussed in plaintiff's brief are applicable to the instant case. They are cases in which the employer was held liable either for torts committed by the employee or for compensation due the employee. None of the cases holds that the surety on a fidelity bond is responsible for the dishonest acts of an employee who is not covered by the bond.

Taking up the exception of no cause of action filed by Mel Dietlein, we find that the plaintiff's petition does not contain any charge of wrongdoing on the part of Dietlein. On the contrary, plaintiff affirmatively alleges in its petition that "Alfred Perry confessed and acknowledged and assumed full and sole responsibility for the said shortage in the stocks, accounts and cash" of the Louisiana Oil Refining Corporation.

The only basis on which plaintiff's action against Dietlein can stand is that under his branch manager's contract Dietlein made himself responsible for the dishonest actions of Perry as set out in plaintiff's petition.

An examination of the contract between the Louisiana Oil Refining Corporation and Dietlein fails to disclose any agreement on Dietlein's part that he would be liable to the corporation for any shortage in its funds arising in the manner alleged in the petition.

Under the terms of his contract Dietlein made himself responsible only for such stocks, equipment and funds of the Louisiana Oil Refining Corporation as would come into his possession. And clearly the responsibility he assumed for any shortages that would be developed by periodical audits by the corporation relates solely to such stocks, equipment and funds coming into his possession for account of the corporation.

The allegations of the petition do not disclose that any audit was made by the Louisiana Oil Refining Corporation of the

funds or stocks that came into possession of Dietlein. On the contrary, the allegations of the petition show that the funds or goods alleged to have been embezzled or stolen had never been placed in the custody of any other person than Perry, who confessed, acknowledged and assumed the sole responsibility for his wrongdoing.

In view of plaintiff's allegation that the goods and money stolen and embezzled had been committed to the custody of Perry and not to the custody of Dietlein and that Perry alone was responsible for the shortages in plaintiff's goods and funds, we fail to see how Dietlein can be held for plaintiff's loss, since under the terms of his contract Dietlein was only responsible for money and goods that came into his possession and not for money and goods that came into Perry's possession.

We think that the exceptions of no cause of action filed by the defendants Mel Dietlein and National Surety Corporation were properly maintained.

For the reasons assigned, the judgment appealed from is affirmed.

### On Rehearing.

FOURNET, Justice.

This is an action by the Arkansas Fuel Oil Company against Alfred Perry, Mel Dietlein, and the National Surety Corporation, in solido, to recover certain losses, aggregating the sum of $2,077.14, sustained by the defalcation of the defendant, Alfred Perry, in the operation of its bulk sales station located at Opelousas, Louisiana.

The matter is now before us for reconsideration of our original decree, wherein we affirmed the judgment of the lower court maintaining exceptions of no cause and no right of action filed by the defendants, Mel Dietlein and the National Surety Corporation, and dismissed plaintiff's suit as to them. The rehearing granted by us is restricted to plaintiff's claim against the defendant, Mel Dietlein, only.

The plaintiff's losses, as disclosed by its allegations, were discovered on February 12, 1936, by an audit conducted by the employees of the Louisiana Oil Refining Corporation, its predecessor, which showed a shortage in the stock, accounts, and cash of its Opelousas bulk sales station. It is alleged " * * * that said shortage was brought about by the said Perry's systematically making sales for cash to various persons, unknown to petitioner, and reporting such sales to petitioner as having been made on credit to persons to whom said Perry was authorized by petitioner to make sales on credit. That upon petitioner's insistence that the said Perry and Dietlein make collections of the false balances thus shown to be due by such authorized customers of petitioner, the said Perry would make remittances to petitioner in most cases, but the funds thus remitted were obtained by engaging again in the same practice of making false charges to authorized credit customers."

It is further alleged that the said Perry continued this system of fraudulent transactions steadily until the time of its discovery; that " * * * the entire amount of the shortage, hereinabove de-

scribed, accrued through false and fraudulent reports and invoices, and through misapplication of funds collected belonging to petitioner, and through embezzlement of monies and goods committed by petitioner to the care of said Dietlein and Perry, all said wrongful acts having taken place during the time between February 26th, 1934, and February 12th, 1936; that said shortage was discovered by the employer on February 12th, 1936, on which date said Alfred Perry confessed and acknowledged and assumed full and sole responsibility for the said shortage in the stock, accounts, and cash, and gave to the employees of the Louisiana Oil Refining Corporation his written statement sworn to before a Notary Public on said date."

Plaintiff's claim against Mel Dietlein is based on a certain contract entered into between them on November 12, 1935 for the operation of its said bulk sales station at Opelousas, wherein Dietlein made himself " * * * responsible for all stocks, equipment and funds coming into his possession, and shall carefully administer same. Any shortage or shortages of stocks, equipment, supplies, or funds which may develop from periodical audits as made by the Corporation shall be charged to the Branch Manager at the time such shortage or shortages appear or are developed by said audit or otherwise, it being mutually agreed that the decision of the Corporation shall be final in all matters of this nature. It is understood that if the Branch Manager can prove that any shortage or shortages of stock, equipment or funds has been due to theft or larceny by persons other than employees of the Corporation or Branch Manager, then and only then the Branch Manager will not be held accountable for such shortages."

A careful examination of plaintiff's petition as amended reveals that the actions of Perry began as early as February 28, 1934 and continued up to the date of their discovery on February 12, 1936, approximately three months after the execution of its said contract, but there is no allegation of any certain or definite article or goods or stocks misappropriated or stolen by Perry during the period of the existence of the contract. The allegations are too general, vague, indefinite, and uncertain to support a cause of action within the contemplation of Section 4 of Article 172, Code of Practice.

But counsel for plaintiff argued in brief and orally that under the stipulation of the contract the branch manager (Mel Dietlein) can only escape the liability for the shortages of Perry by showing that the losses were due to theft or larceny by other persons than employees of the corporation or branch manager.

The clause referred to by counsel, in our opinion, when read in conjunction with the rest of the contract, means that Mel Dietlein agreed to and did make himself responsible for all stock, equipment, and funds coming into his possession, and those for whom he was responsible, such as his agents and employees, from the date he entered into said contract, and not prior thereto.

We therefore conclude that the trial judge properly sustained the exceptions of

no cause or right of action filed by Mel Dietlein.

For the reasons assigned, our original decree is reinstated and made final.

LAND, J., absent.