## MONETTI v. STANDARD OIL CO. et al.
### No. 17337.

Court of Appeal of Louisiana. Orleans.

April 8, 1940.

Rehearing Denied May 6, 1940.
Writ of Certiorari Denied July 18, 1940.

Dudley Yoedicke and M. C. Scharff, both of New Orleans, for appellant.

T. M. Milling, A. M. Curtis, and R. B. Jennings, all of New Orleans, for appellee.

JANVIER, Judge.

Mrs. Julia Monetti brings this suit in tort against Albert Scott, William Gomez and Standard Oil Company of Louisiana. The negligence on which the suit is founded is alleged to have been a careless act of Scott in moving, from in front of the gasoline filling station of the Standard Oil Company at West End in New Orleans, a motorcycle which had been left by an unknown owner in such position as to im-

pede traffic to and from the station. Gomez and the Standard Oil Company, to which we shall hereafter refer as the "oil company", are made defendants on the theory that Scott, when he moved the motorcycle and carelessly permitted it to roll against plaintiff, was a servant or employee of Gomez and of the oil company and was, at the time, acting within the scope of his employment.

Plaintiff alleges that on Sunday morning, May 23, 1937, some unknown person had parked a heavy delivery motorcycle in front of the West End service station of the oil company; that this motorcycle was parked in the passageway through which customers of the station entered and left and that it impeded and obstructed the passage of customers to and from the station; that Scott, an attendant at the said station, saw that the motorcycle impeded traffic, and, therefore, attempted to push it from in front of the station to the other side of the road; that Scott did not start the motor, but carelessly and negligently permitted the motorcycle to roll into the soft drink stand of petitioner, to crash through the railing and to strike petitioner, inflicting the injuries.

Petitioner further alleges that, at the time of the accident, Scott was in the employ of Gomez and of the oil company and that he was acting in the capacity of service station attendant and that the act which resulted in petitioner's injuries was done within the scope of his employment.

It is not denied that the accident occurred and, in fact, it is not seriously contended that Scott was not negligent in permitting the motorcycle to escape from his grasp and to crash into plaintiff and there is no serious defense interposed on behalf of either Scott or Gomez. Gomez admits that Scott was his employee and, accordingly, that he is responsible, along with Scott, for the results of the negligent acts of the latter committed within the scope of his employment, but all defendants deny that Scott was an employee of the oil company. It is admitted that Gomez was the agent of the oil company, employed by it to superintend and manage and operate its oil station on a commission basis, but it is contended that, in the agency contract between Gomez and the oil company, though, by inference, Gomez was authorized to employ others to assist him, it was especially provided that any such other person employed should not be considered as an employee of the oil company, but should be looked upon solely as an employee of Gomez. It is not maintained that Gomez himself was an independent contractor, operating the oil station for his own account, it being admitted, as we have said, that he himself was an agent of the oil company, but it is contended that, by the said agency contract, so far as any other employee might be concerned, he was made an independent employer and stood between any such other employee and the oil company.

In the court below there was judgment in favor of plaintiff solidarily against Gomez and Scott in the sum of $1,200 and plaintiff's suit as against the oil company was dismissed. From this judgment plaintiff has appealed, but we find no appeal on behalf of either Gomez or Scott.

The sole question, then, is whether the relationship between Scott and the oil company was such as to render the latter liable for the negligent acts of the former.

It is well to remember that Gomez himself was not an independent contractor. Not only is he designated in the contract as an agent of the oil company and not only is he shown to have been employed to manage and operate the oil station for the company, but it appears that the company retained the right to control entirely his operations in managing the said station and the further right to discharge him at will by terminating the contract.

There is some dispute among counsel concerning the question of the legal relationship which exists between a principal and an employee of an agent where the employee is engaged by the agent with the consent of the principal, and there is, no doubt, room for disagreement concerning the views of the text-writers and of the authors of judicial opinions on that subject. Mr. Mechem, author of a treatise on agency, is one of the leading writers on the subject. The views of this author, as expressed in his second edition, are discussed by the United States Circuit Court of Appeals for the Fourth Circuit in Gulf Refining Company v. Brown, 93 F.2d 870, 874, 116 A.L.R. 449, which case involves a question very similar to that presented here. There the court concludes that there is no proper foundation for the view that a principal "may avoid liability for the conduct of subagents by entering into an agreement like that in the present case wherein the agent is empowered to employ

assistants to do the work and agrees to assume responsibility for their acts." The court then shows,—as we think, correctly, —that neither in the work of Mr. Mechem, nor in the Restatement of the Law of Agency of the American Law Institute, is there any indication of such a view and that the sounder doctrine is to the effect that "when there is an express or implied consent to the appointment of the subagent as the agent of the principal, there arises such a privity between the subagent and the principal as renders the latter liable for the acts of the subagent to the same extent as in the case of any other agent; * * *". In other words, that, for the acts of a subagent, the principal is liable if the employment of the subagent was authorized and if the acts were within the scope of the employment and were within the reasonable contemplation of the parties as necessary in the carrying out of the purpose for which the principal contracted with the agent. This view finds approval in Goff v. Sinclair Refining Company, La. App., 162 So. 452, which involves facts strikingly similar to those involved here.

Counsel for defendant characterize that case as inapplicable here because there the court merely overruled an exception and remanded the matter for trial on the merits. But the court did set forth in full the allegations on which it was sought to hold the principal liable for the acts of the employee of the so-called "independent contractor" and said that, if the evidence should show these allegations to be true, then there would be liability in the principal. We note a remarkable similarity between the allegations of that petition and the facts disclosed in this record.

Counsel for defendant find much comfort in the decision of the United States Circuit Court of Appeals for the Sixth Circuit in Texas Company v. Brice, 26 F.2d 164, 165, which case, it is true, involved facts presenting for solution a legal question somewhat similar to that before us. There Hutton was either the agent or independent contractor. who had employed the driver whose negligence caused the accident. The court said that it was unnecessary to determine whether Hutton was an agent or an independent contractor, the test of liability of the principal being "whether the defendant either expressly or impliedly authorized Hutton to employ this driver as the agent or servant of the defendant", and the court said further that it had searched the record in vain for evidence that there was any such authority for the employment of a subagent as an employee of the principal.

■■ We find no fault with that view, though it does seem to conflict, to some extent, with the conclusion reached in Gulf Refining Company v. Brown, supra. Our failure to find fault with the view expressed in Texas Company v. Brice, supra, results from our own conclusion that it is not in every case of employment of a subagent by an agent that we think that the principal should be held liable for the results of the torts of the subagent, but that such liability should be held to result only where the employment by the agent of a subagent has the consent, implied or express, of the principal, who can be said to have acquiesced in the employment of the subagent as the employee of the principal, or where the nature of the work which the agent is engaged to do is such that it is obvious that other employees will be required to do it, for we agree fully with the statement contained ·in the opinion in the Brown case that "It is clear that a principal may not escape liability to third persons for the torts of a subagent, appointed by his agent with his consent, merely by entering into a contract with his agent under which the latter assumes sole responsibility for the subagent's conduct."

Here the record shows beyond any doubt the impossibility that one ˚ agent could have had the physical ability to operate the oil station of the principal. It is clear that there must have been an assistant, and, in fact, various clauses in the contract show clearly that the parties contemplated that such an assistant, or possibly more, should be employed. Why, then, should the principal, desiring to have its oil station operated efficiently and realizing the necessity for other employees, be permitted to maintain, by an agency contract, full supervision over the station, and yet, through provisions in that same contract, escape liability for the acts of the employees engaged in carrying out the very purposes for which the station was established? We find that this thought —that, where the work for the performance of which the contract is entered into is such as to indicate the necessity of the employment of a subagent, there is liability in the principal for the acts of the subagent—is approved by the text-writers.

In Ruling Case Law, Volume 18, "Master & Servant", page 785, section 245, under the

caption "Subagents or Assistants Engaged by Employees", appears a statement to the effect that the authority in the agent to employ a subagent "may be implied from the nature of the work to be performed." To the same effect see Corpus Juris, Volume 39, section 1458, page 1271, where, in a paragraph headed "Assistants Employed by Servant" and in which it is stated that " * * * A master is liable for the acts of one whom the servant employs under authority given him by the master * * * ", it is further said that this authority to employ assistants "may be implied from the nature of the work to be performed, from the general course of conducting the business of the master by the servant, or from the circumstances of the particular case."

Counsel for defendant place reliance upon what was said by our Supreme Court in Arkansas Fuel Oil Company v. National Surety Corp'n et al., 191 La. 115, 184 So. 560, for there the court found that a surety on a fidelity bond issued to a corporation could not be held liable for the peculations of one who was not an "employee" within the terms of the bond. The court found that, because of the contract between the corporation and its agent, the defaulting employee could not be said to be an employee of the principal, but was an employee of the agent.

It is true that the court in that case based its conclusion that the servant was not an employee of the corporation on the fact that it could not direct the agent as to whom it must employ, but could only tell him whom he might not employ, and it is true that, among other reasons given for the conclusion that the defaulter was not an employee was the fact that it (the corporation) had no control over his actions. It is likewise true that, so far as Scott, the negligent employee here, is concerned, the contract gave to the oil company no control over his actions and did not give to the oil company the right to select him as an employee, but gave it only the right to object to him if it saw fit to do so. To this extent, then, the facts here make applicable what was said in that case.

■ But it must be remembered that there were not involved any rights except those of the parties to the contract, and it was only proper that, since those parties made their own contract and, in it, had determined the status of all parties mentioned, they should be controlled by its terms. Here we find a proceeding based on the application of the doctrine "respondeat superior", which doctrine involves solely the rights of third persons. Where this doctrine is involved, it is necessary to look at the true relationship between the parties, and, while the contract may be of importance in determining what is the relationship, it is not the determining factor which it is where there is involved a right growing out of or based on the contract. This distinction was recognized by the court itself in that case, for it said that cases involving liability for torts committed by employees were not applicable to that case.

■ We conclude that although, in such a situation as is found here, a corporation may contract for the operation of a station by an independent contractor and may surrender to that contractor full supervision and control over the station and may, thus, escape liability for torts of the employees of the independent contractor, nevertheless, where it voluntarily chooses to operate such a station through an agent and the contract and the facts show an anticipation that others will be necessary to carry out the work for which the agent is employed, then, for the acts of those others done in the scope of their respective employments, the principal is liable.

Counsel for defendant maintain that, because of certain facts, the Brown case may be further distinguished from the case at bar, and that, as a matter of fact, that case contains language which is favorable to the contention of defendant. They refer to the fact that the court intimated that, where an agent conducts not only the business of his principal, but also carries on trade for his own account, or as an independent contractor, his employees, while carrying on his separate independent business, are not to be considered as employees of the principal. The court said: "It is conceivable, of course, that the business of the master could be divided so that parts thereof would be performed by a servant and other parts by an independent contractor."

And later it said that the ratio decidendi of that case was that the negligent employee was performing services "in that department of the distributor's activities which was so completely regulated and controlled by the company as to leave no place for an independent contractor."

There can be no doubt of the soundness of that principle and if, here, Gomez could

be shown to have had any independent business, in the furtherance of which Scott was acting at the time of the accident, whatever the relationship between Scott and the oil company might otherwise have been, it would be proper to say that, under those circumstances, there was no relation of employer and employee.

■ But counsel base their contention that, in the case at bar, Scott was not performing service for the oil company, on the fact that he was not distributing oil or gasoline, but was pushing aside a motorcycle which was not owned by the oil company. But the record shows, by the statement of Scott himself, and otherwise that he was moving the motorcycle in order to make it possible for customers to have access to the stations. Under these circumstances, we think it obvious that he was acting within the scope of his employment, which contemplated assisting customers in purchasing gasoline and oil.

■ Our conclusion is that Scott, at the time of the accident, was acting within the scope of his employment by the Standard Oil Company and that, therefore, that corporation is liable for the results of his negligent acts.

When we come to consider the extent of the injuries sustained by Mrs. Monetti, we find that there is substantial agreement among the doctors to the effect that she suffered a very severe contusion of the left leg, a lacerated wound approximately two inches long and an inch wide in the vicinity of the middle third of the tibia of the left leg, contusions of the right leg, and contusions of the right forearm. The physicians, however, differed as to whether or not the varicose veins from which she now suffers have resulted from the injury and as to whether or not she has otherwise entirely recovered.

In his reasons for judgment the district judge stated that "though considerable time had elapsed between the date of the accident and the time of the trial, Mrs. Monetti's injured leg was still noticeably swollen when she appeared in court".

The evidence shows that, as a result of the varicose veins, it is impossible that she stand on her feet for any length of time, and it follows that she could not properly attend to her duties in connection with the operation of her cold drink stand. We think, then, that if our brother below had felt that this condition had resulted from the accident, he would have made an award considerably greater than that to which he holds that she is entitled, and, therefore, we feel that, in his opinion, the varicose veins did not result from the accident.

We think it unnecessary to enter into a detailed discussion of the evidence of the doctors concerning this condition and merely state that we find nothing therein to justify the view that the present condition of these veins is attributable to the unfortunate occurrence.

In his reasons for judgment the district judge stated that he thought the judgment should have been for a sum approximating $2,000 but that he had reduced it to $1,200 because of the poverty of Scott and Gomez, the two defendants.

■ We agree with the judge of the district court that the amount to which she is entitled is somewhat in excess of $1,200 and yet we think that $2,000 would be more than should be awarded. We have concluded to allow her recovery as against Standard Oil Company of $1,500, in addition to the amount of her expenditures.

■ Though, in her petition, Mrs. Monetti only sought recovery of $28 as the amount of the bill of her doctor, the record contains evidence, which was admitted without objection, showing that she has actually expended $53. She is obviously entitled to recovery of this amount.

■ The Standard Oil Company prays for judgment in warranty against Gomez for such amount as it may be required to pay, basing this claim on that provision of the contract under which Gomez agreed that he would hold the said oil company harmless against all claims, damages, or losses of any character whatsoever. It is true that the judgment against Gomez in favor of plaintiff is limited to $1,200 and that, therefore, if judgment in warranty is rendered against Gomez in favor of the oil company, that judgment would be for a greater amount. But we know of no reason which would prevent one, who himself is cast as a defendant, from being liable in warranty for a greater sum. We have given thought, however, to the fact that, since we hold Scott to be an employee of the oil company itself, it might be argued that Gomez is not liable under the warranty provision of the contract since that contemplates that he will be liable in warranty for the acts of his own employees and possibly does not contemplate an agreement by him to indemnify the oil company against the acts of those others

who may be and in fact, have been considered by us to be direct employees of the oil company. But we think that that situation should not prevent the operation of the warranty clause of the contract. It was contemplated by the oil company and by Gomez that, whatever might be the actual relationship between those employed by Gomez and the oil company, insofar as the contract is concerned, they would be considered employees of Gomez and that he would be responsible to the oil company for the results of their acts.

Such a situation was considered by the Court of Civil Appeals of Texas in Gulf Refining Company v. Rogers, 57 S.W.2d 183, 184, in which that court, to quote from the syllabus, held that: "The written contract between oil company and manager of its filling station bound manager to operate station at own expense and pay all damages to public occasioned by manager, or his employees, and further provided that neither manager nor his employees should be deemed employees of company. Even though manager was not independent contractor, but agent of company, so as to make company liable to third persons for negligence of employee selected by manager of filling station, this did not prevent manager from contracting to respond in damages for injuries committed by those selected by him; and therefore oil company was entitled to judgment over against manager for amount recovered against company by customer. of filling station injured by negligence of employee."

We believe this reasoning to be sound.

It is therefore ordered, adjudged and decreed that the judgment appealed from, insofar as it runs in favor of defendant, Standard Oil Company of Louisiana, and against Mrs. Julia Monetti, plaintiff, be and it is annulled, avoided and reversed, and that there now be judgment in favor of Mrs. Julia Monetti, plaintiff, and against Standard Oil Company of Louisiana, defendant, in the sum of $1,553, with legal interest from judicial demand and for all costs, this judgment, up to the sum of $1,200, to run against that company solidarily with the judgment against William Gomez and Albert Scott.

It is further ordered, adjudged and decreed that there now be judgment in warranty in favor of Standard Oil Company of Louisiana and against William Gomez, in the full sum of $1,553 and for all costs.

Reversed in part; amended and affirmed in part.