## TEXAS CO. v. HIGGINS.

### No. 168.

Circuit Court of Appeals, Second Circuit.

April 4, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Thomas G. Carney, Sp. Assts. to Atty. Gen., for appellant.

Harry T. Klein and Albert E. Van Dusen, both of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action to recover the amount paid to the defendant, a collector of internal revenue, as social security taxes under §§ 801 and 804 of Title VIII of the Social Security Act, 42 U.S.C.A. §§ 1001, 1004. It was tried to a judge without a jury, partly upon stipulated facts and partly upon testimony; and the only question is whether the judgment is supported by the following facts, all of which the judge found. That plaintiff is a large oil company engaged in business in many states, and using as part of its outlet "distributors" stationed here and there throughout its territory. Among these was one Thomas, of Marion, Virginia, with whom on January 1, 1937, the plaintiff entered into a contract in its standard form. Thomas agreed to sell the plaintiff's "petroleum products" as "consigned to him," and to account for the proceeds when collected; he was to sell at the plaintiff's prices, to bear all expenses except freight and taxes on the products consigned, to furnish his own trucks and other equipment which must conform with the plaintiff's standards, and at his expense to hire and pay the wages of all necessary assistants, over whom he assumed full control and responsibility and for whose acts

he was to indemnify the plaintiff if necessary. He was to remit daily all his collections without deduction, receiving from the plaintiff commissions upon his sales in accordance with a fixed tariff. Either party could terminate the relation on five days' notice, and the plaintiff might buy out the plant at the amount which Thomas should have invested in it.

In accordance with this contract Thomas built and operated a distributing station at Marion into which he put $33,000, and another at Abingdon, Virginia, into which he put $30,000; he thus became the owner of both these and of all of the property upon them (buildings, tanks, pump houses and the like, together with three passenger cars and three trucks). He conducted both stations under the name, "Thomas Oil Company"; at Marion he had four assistants, whom he hired and discharged at his pleasure, and whose wages, hours and working conditions he determined, and he paid the social security taxes which fell due upon their wages. (Besides operating these two stations Thomas had many outside activities not necessary to describe in detail.) He paid all expenses arising from the operation of the stations; the telephone and bank account were in his name; and he did some local advertising. He did not report to the plaintiff the salaries he paid; he fixed the hours and days during which the plant should be open. He purchased his trucks and cars without consulting the plaintiff and kept his own records which were however audited by the plaintiff's examiners. He was not responsible for customers' accounts except in so far as they exceeded the credit which the plaintiff fixed for each one. The plaintiff gave to Thomas, as to every other "consignee," a manual setting out in much detail its admonitions as to the proper way to operate one of its "bulk stations" (the defendant relies much on this as indicating the control which the plaintiff exercised over the business). It is clear that this was not in any sense intended as a set of directions to which the "consignees" must conform. On the contrary they were suggestions or recommendations based upon the plaintiff's experience as to how such a station could be made successful. This appears from the "preface," of which the salient parts are these: "This Manual * * * is intended to serve as a guide to more successful and efficient bulk plant operation. * * * The suggestions contained herein are the result of many years of experience. * * * They are

offered to consignees in the spirit of helpfulness and with the sincere desire that the greatest benefits may be secured by all."

This being the situation, the Commissioner assessed the plaintiff under Title VIII, 42 U.S.C.A. § 1001 et seq., for social security taxes upon Thomas's commissions and the wages of his employees at the Marion station, on the theory that they were all its "employees." These it paid under protest and it now seeks to recover them. Section 801 imposes part of the tax upon the employee's income (which § 802(a) requires the employer to collect by deducting it from his wages) and § 804 imposes the remainder upon the employer personally. Section 811 and § 1101 define the terms used in the statute, of which only § 811(b) is relevant here. This declares that " 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer." Article 3 of the regulations (Regulations 91) promulgated under Title VIII amplifies this definition as follows: "the relationship * * * must * * * be the legal relation of employer and employee. Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee." The judge concluded that Thomas and his employees were not "employees" of the plaintiff and gave judgment accordingly. The only decision directly in point is Indian Refining Company v. Dallman, D.C., 31 F. Supp. 455, which was in favor of the plaintiff under a contract substantially the same as that at bar.

Were the question presented to us for the first time, we should have no doubt that Thomas and his assistants were not "employees" of the plaintiff; the act appears to take over the term as the common law knew it, and at common law they would not be employees. The regulation is in harmony with this assumption, for it enumerates the generally accredited determinants in such cases, of which the most important is the putative employer's control over the employee's business. In the case at bar, the plaintiff had no control except to fix the prices at which Thomas must sell and the credit he might grant any customer without personal responsibility. The defendant denies that the plaintiff had no more control than this; he argues that the power to end the agency and take over the plant at cost, gave it absolute power over the business, because by this sanction it could not only intervene when and as it chose, but could direct the details of every move made. We cannot agree. The character of the relation was determined by the rights and obligations assumed, and it is no answer that the plaintiff could force a change in these by threatening to terminate the agency. Assuming that Thomas would inevitably have complied with invasions of his rights secured by the contract—which is by no means certain and would obviously depend upon how burdensome these were—legally, the effect would be to force upon him pro tanto a new agreement. The plaintiff's power to end the agency was merely a power to free itself from all obligations; it was not a legal power to compel Thomas to assent to new proposals, and it might, or might not, be effective for that purpose. While the agency lasted the plaintiff had no control at all save that reserved, and Thomas was merely a factor receiving goods on consignment, and a factor is not an "employee" but an "independent contractor." Restatement of Agency § 1 comment d. In accordance with this understanding, the supreme courts of Kentucky and Mississippi have held that an oil company operating under a like contract is not liable for social security taxes imposed under similar state statutes. Barnes v. Indian Refining Co., 280 Ky. 811, 134 S.W.2d 620; Texas Company v. Wheeless, 185 Miss. 799, 187 So. 880. A persuasive reason for this conclusion, at least in the case at bar, is that Congress could scarcely have meant a man doing a business like Thomas's to enjoy the benefit of unemployment allowances; and if he was not an "employee,"

his four assistants were not; the servant of a servant may be the master's servant, but the servant of an "independent contractor" is not. United Gas Improvement Co. v. Larsen, 3 Cir., 182 F. 620.

For these reasons, if the question were res integra, it would, as we have said, have seemed to us plain, but the legal relation arising under such contracts has been passed upon in a great many cases, and has resulted in much confusion. Generally the question has been of the oil company's liability for injuries due to the negligence of the "distributor" or his servants, and, while that naturally depends upon the terms of the contract, the differences among these were not enough to account for the conflict, which has extended at times even to the same jurisdiction. Judge Soper in Gulf Refining Co. v. Brown, 93 F.2d 870, 116 A. L.R. 449 (a case in which the Fourth Circuit in January, 1938, imposed liability on the oil company) collected most of the decisions that had been made up to that time, either in tort or for workmen's compensation. By that count the following states imposed liability: Tennessee, Arkansas, Louisiana, Mississippi, South Carolina, Oregon, Oklahoma, California, Minnesota, Arizona and Texas. (Lynn v. Roberts, 257 Mich. 116, 241 N.W. 214, does not seem to us to have involved the point.) Against liability were only West Virginia, Florida and North Carolina. Since that time the trend appears to have changed a little; several new jurisdictions have come out against liability and some of the old ones show at least signs of changing their position. The following decisions either deny liability outright, or appear to discountenance it. Jones v. Standerfer, 296 Ill.App. 145, 15 N.E.2d 924; Darner v. Colby, 305 Ill.App. 163, 26 N.E.2d 1001; Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823; Google v. Speaks, 194 S.C. 206, 9 S.E.2d 439 (semble); Gordy v. Pan American Petroleum Co., 188 Miss. 313, 193 So. 29, 35; Donovan v. Standard Oil Co., La.App., 197 So. 320; Sowers v. Howard, Mo.Sup., 139 S.W.2d 897, 902; Arkansas Fuel Oil Co. v. Scaletta, 200 Ark. 645, 140 S.W.2d 684; cf. Arkansas Fuel Oil Co. v. National Surety Corp., 191 La. 115, 184 So. 560. On the other hand liability was imposed in Becker v. Aschen, 344 Mo. 1107, 131 S.W.2d 533, and Monetti v. Standard Oil Co., La.App., 195 So. 89. It would be difficult therefore to say that there was today such a preponderance either way as should control the interpretation of the statute and regulation, even if the

existence of a settled doctrine as to liability would be determinative of the tax. As to that it should be remembered that a vital consideration in imposing liability may well have been that the injured person was likely otherwise to be without any actual remedy.

In view of all this, it seems to us that the most satisfactory course is to decide the case by recourse to the defining regulation. We have already said that the most important of the factors which it enumerates did not here exist; it is the "right" of the putative employer to direct "the details and means by which the result is accomplished;" he must be able to say not only "what shall be done but how it shall be done." (It is true that the regulation says that it is the existence, not the exercise, of this "right" that counts; but we have already shown that the defendant's argument drawn from the power to end the agency does not meet this demand.) Next, the regulation declares that the "right to discharge" is "an important factor"; this too the plaintiff did not have. Nor did it "furnish" any "tools" to Thomas or any "place to work." Finally, he was not "subject to" the plaintiff's "direction * * * as to the means and methods for accomplishing the result"; i. e. how its products should be sold. Thus, not a single differentia of those which the regulation lays down was here satisfied. For these reasons we think that the judge was right in holding that Thomas was not an "employee" of the plaintiff.

Judgment affirmed.