This is an appeal from a summary judgment entered in favor of the defendant, Preferred Risk Mutual Insurance Company ("Preferred Risk"), and against the plaintiffs, John Miller and his adult daughter, Angela Miller, in an action alleging a bad faith failure to pay an insurance claim.[1] Although both parties refer to the judgment that is appealed from as a dismissal of the Millers' complaint, the trial court, in fact, entered a summary judgment. The confusion regarding the court's treatment of the case was apparently caused by the language used in the order granting Preferred Risk's motion: "Motion of Preferred Risk Mutual Insurance Company to dismiss the Bad Faith Claim is granted. The evidence shows that a disputed issue of fact existed as to the actual cash value of the automobile." If, on a motion to dismiss, the court considers matters outside the pleadings, the motion is converted to one for summary judgment and Rule 56, Ala.R.Civ.P., is then applied. Moore v. Watson,429 So.2d 1036, 1037 (Ala. 1983).
The dispute between the Millers and Preferred Risk arose after John Miller filed a claim under his policy seeking payment for his daughter's 1986 Pontiac Fiero automobile, which had been "totalled" in an accident.[2] The Millers contended that the car had a value of $13,483.96. That figure appears to have been based on the full loan amount outstanding on the car. Preferred Risk disagreed, stating that it calculated the car's actual cash value to be $9,739.99. In a letter to the Millers, Preferred Risk explained that its figure had been arrived at by beginning with the replacement cost of a 1986 Fiero with no mileage, and then deducting $.20 for each of the 18,719 miles on the car's odometer. It then subtracted the deductible that was applicable under *Page 1262 
the terms of the policy.[3] At no time have the Millers alleged that Preferred Risk's method of calculating the car's actual cash value was unreasonable or unusual.[4]
Preferred Risk tendered a check to the Millers for $9,739.99. They returned the check and contemporaneously filed their first complaint against Preferred Risk, alleging, inter alia, that the insurer had breached the insurance contract and had, in bad faith, refused to pay the "full amount" owed under the policy. The letter from the Millers' lawyer that accompanied the check stated that the check was being returned because acceptance of it "would appear to extinguish [the Millers'] claim." Preferred Risk filed a motion for summary judgment on the bad faith claim. That motion was granted, and the Millers' motion to "reconsider" was denied.
The Millers subsequently amended their complaint, adding a modified bad faith allegation. They alleged, inter alia, that Preferred Risk had, in bad faith, refused to pay them the amount it conceded was due unless they accepted that sum as full satisfaction of all of their claims against it.[5] Preferred Risk moved for summary judgment on this second bad faith claim. It denied that its attempt to pay the Millers what it considered to be the actual cash value of the car was conditioned on their signing a release. Preferred Risk's motion was supported by an affidavit from a Preferred Risk employee and copies of the check that had been tendered to, and returned by, the Millers. There is no release language on that check. The Millers did not file any affidavits or other items in opposition to Preferred Risk's motion, and they do not point out any evidence to this Court that supports their allegation that the insurer conditioned its attempted payment on a release. The trial court granted Preferred Risk's motion, and the Millers appeal.
This Court formally recognized the tort of bad faith failure to pay an insurance claim in Chavers v. National Security Fire Casualty Co., 405 So.2d 1 (Ala. 1981). The elements of a bad faith action are:
 (a) an insurance contract between the parties and a breach thereof by the defendant;
 (b) an intentional refusal to pay the insured's claim;
 (c) the absence of any reasonably legitimate or arguable reason for that refusal;
 (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
National Security Fire Casualty Co. v. Bowen, 417 So.2d 179,183 (Ala. 1982).
After reviewing the record, we conclude that there is no evidence to support the Millers' allegation that the insurer's attempted payment was conditioned on a release. As we noted inChavers v. National Security Fire Casualty Co.,456 So.2d 293, 294 (Ala. 1984), the accrual of a claim for bad faith is a question that must be determined by the circumstances of each case. Preferred Risk made a prima facie showing that it had acted reasonably and not in bad faith. The Millers presented no evidence to rebut that prima facie showing. *Page 1263 
Thus, we must conclude that there was no genuine issue of material fact and that Preferred Risk was entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] The complaint also included contract claims, including Angela's claim in which she alleged that she was an insured under the policy and entitled to medical benefits for her personal injuries. Those claims are not at issue here.
[2] The complaint alleged that John Miller bought the car in his name for Angela because Angela could not obtain credit, but that Angela had made the installment payments and was the principal operator of the car. Angela was 19 when the car was bought in August 1986. The accident occurred in March 1987 and Angela was added as a plaintiff in August 1989. Although some of the claims are by John Miller alone, we will refer generally to the claimants/plaintiffs as "the Millers."
[3] Preferred Risk's liability under the policy was limited to the lesser of:
(a) The actual cash value of the car; or
(b) The amount needed to replace the car.
[4] Under the terms of the policy owned by John Miller, he was, entitled to have the car appraised by an independent appraiser if he disagreed with Preferred Risk's valuation. The car's value would then be determined by an impartial umpire. He did not take advantage of that option.
[5] Preferred Risk paid the Millers the cash value of the Fiero after the entry of the first summary judgment and before the amendment of their complaint. The Millers concede that the second check was tendered to them without prejudice. They accepted that check. The Millers' underlying contract claim was later tried before a jury, which returned a verdict for Preferred Risk.