[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1270 
The plaintiff, Kerri L. Henson, appeals from a summary judgment in favor of the defendants, Celtic Life Insurance Company ("Celtic"), Celtic's claims adjusters Dun Bradstreet Plan Services and Plan Services, Inc.[1] ("Dun Bradstreet"), and Celtic's agent Belton Jones III.
On April 4, 1990, Henson brought an action alleging breach of an insurance contract, bad faith refusal to pay an insurance claim, and fraud, misrepresentation, and deceit.[2] On June 6, 1990, Henson amended her complaint to add a claim alleging negligence and/or wantonness on the part of Jones in procuring an insurance contract. On July 26, 1990, Henson again amended her complaint to add a claim alleging fraudulent suppression of a material fact, against all the defendants. The defendants subsequently moved for a summary judgment; the Madison County Circuit Court entered a summary judgment for all defendants. The issues presented require us to consider whether the trial court erred in holding that there was no substantial evidence that: 1) the defendants were guilty of fraud by virtue of Jones's representation to Henson's mother that he would write a health insurance policy for Henson that excluded only Henson's epilepsy; 2) the defendants suppressed a material fact by not disclosing to Henson that employment was a condition of her insurance coverage; 3) the defendants acted negligently and/or wantonly in failing to procure health insurance for Henson after they had promised to do so; 4) Celtic breached the insurance contract by failing to pay the claim at issue here; and 5) Celtic, assuming that it otherwise would have been justified in refusing to pay the claim, nevertheless waived its right to refuse payment on the claim by its actions while reviewing the claim.
The applicable standard for our review of a summary judgment is the "substantial evidence" rule. Under this rule, once the movant has shown, prima facie, that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law, the nonmovant must introduce "substantial evidence" to rebut this showing. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); Ala. Code 1975, § 12-21-12(d). Also, all reasonable *Page 1271 
doubts concerning the existence of a genuine issue of fact must be resolved in favor of the nonmoving party. Hanners v. BalfourGuthrie, Inc., 564 So.2d 412 (Ala. 1990).
The facts of this dispute, viewed most favorably to the nonmovant, Henson, are as follows: Defendant Jones was approached by Kerri Henson's father regarding the purchase of health insurance for his daughter Kerri. After a discussion of the matter, Henson's father advised Jones to contact Henson's mother regarding the particulars of the policy. Jones did seek out Henson's mother, who told him that she was looking for health insurance for her daughter Kerri Henson, and that such insurance was difficult to obtain because the daughter had an epileptic condition. Jones allegedly responded that he would "write a policy for Kerri, excluding the epilepsy." This statement is the basis for Henson's allegation of fraud. Jones subsequently located a suitable policy at Celtic and gave a policy application to Henson's mother for Henson to fill out.
Henson's mother took the policy application home for Henson to fill out on September 23, 1987; Henson completed the policy application that day and gave it to her mother, who then returned it to Jones. It is undisputed that Jones never explained the policy to her, as he was required to do by the Celtic employee handbook; in fact, he had no direct dealings with Henson at all and communicated with her only through her mother.
The policy application required the applicant to give certain employment information. Celtic viewed this information as crucial, because, according to the testimony of Thomas Stead, the vice-president of Celtic's claims department, one of the eligibility requirements was that all applicants be employed at least 30 hours per week. In the application, Henson represented that she was employed as a ticket salesperson/cashier at the Von Braun Civic Center; in response to a question concerning the number of hours she worked per week, Henson wrote "35 ?". Henson had in fact not received a paycheck from the Von Braun Civic Center since July 3, and the undisputed testimony shows that her last actual day of work was June 27, 1987. Also, the evidence shows that Henson had been fired from her job at the Civic Center on September 21; Henson asserts that she did not know of her termination at the time she filled out the policy application, and that she was only apprised of it on March 18, 1988, when she received notice of termination from Von Braun Civic Center.[3]
Henson was subsequently hospitalized for a depressive condition at Charter Peachford Hospital in Atlanta from January 23 to February 4, 1989, and incurred medical bills of approximately $4,500. Dun Bradstreet initially denied the claim because it believed the hospitalization was due to Henson's epileptic condition, which was expressly excluded from coverage in a rider to the policy. A review committee at Dun 
Bradstreet later reversed the denial, and Celtic agreed with the decision of its claims administrator to pay the claim; Celtic's decision is memorialized in an internal memorandum dated August 14, 1989.
Celtic, upon further review and at a time not explicitly disclosed by the record,[4] refused to pay the claim because it determined that Henson was unemployed. Celtic had, however, paid claims submitted by Henson both before and after the hospitalization at Charter Peachford during the period January 23-February 4, 1989.[5] *Page 1272 
Moreover, the bill submitted by Charter Peachford on or before February 9, 1989, for Henson's hospitalization indicated that she was unemployed. There is also evidence that an employee in the cost management department at Celtic, Robin Moss, became aware of Henson's employment status on or before February 7, 1989, and wrote a computer bulletin indicating this status, which was available to Dun Bradstreet. Celtic maintains that it had attempted to procure employment records from Henson on several occasions both before and after it denied the Charter Peachford claim, and that Henson had not responded to its requests. Celtic contends that as soon as it learned of Henson's unemployed status it denied coverage under the policy.
Henson first contends that the trial court erred in entering the summary judgment on her claim of fraud or misrepresentation, because, she says, there were factual issues to be determined by the jury on this claim. The defendants counter by asserting that Jones cannot be held liable for fraud or misrepresentation, because he did not say anything directly to Henson. They cite Ames v. Pardue, 389 So.2d 927 (Ala. 1980), as support for this proposition; the trial court also cited Ames in its summary judgment on the fraud/misrepresentation count.
Ames involved an action by a mortgagor against a mortgagee to set aside a sale of the mortgaged property to a third person. One of the plaintiff Pardue's allegations was that the mortgagee had committed fraud by quoting the mortgage balance to the third party, Ames, as less than it actually was. In holding that Pardue had not proved fraud by the bank that would support an action for misrepresentation, this Court stated:
 "It is fundamental that the representee who relied on the defendant's misstatement and the plaintiff who was injured must be one and the same. The representee must have relied on and have been deceived and damaged by the statement. Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59
(1896). Recovery cannot be had unless plaintiff relied on the fraudulent representations of the defendant. Jordan v. Pickett, 78 Ala. 331 (1884). In this case, the representee, Ames, relied on the bank's statement but has not been injured as a result, and plaintiff Pardue did not rely on the misrepresentation."
Ames, 389 So.2d at 931.
This statement, although a correct statement of the law, does not support the theory that direct communication between the representee and the one making the fraudulent statement is an absolute prerequisite to an action for fraud. In Ames, the communication, although perhaps intended to benefit the bank at Pardue's expense, was not directed toward him in the sense that the bank intended Pardue to act upon it. In the present situation, however, it is undisputed that Jones intended and expected Henson's mother to pass his statements on to Henson. In such a situation, Henson was entitled to rely on any statements ultimately directed to her, and it is immaterial that the statements were not made to her personally or by correspondence directed to her personally. See National StatesIns. Co. v. Jones, 393 So.2d 1361 (Ala. 1980); 37 C.J.S. Fraud
§ 60 (1944).
Henson relies heavily on Hicks v. Globe Life Accident Ins.Co., 584 So.2d 458 (Ala. 1991), for support for her fraud claim. That case is factually distinguishable from the present situation, however, and thus affords Henson no support. InHicks, the plaintiff was approached by an insurance agent who persuaded her to relinquish the health insurance policy she then held in favor of a policy written by the agent's company. The agent accomplished this by representing to the plaintiff that his policy would cover 80% of her hospitalization costs, with no deductible, and that his policy was cheaper than her existing policy. *Page 1273 
The agent meticulously went over the policy with the plaintiff, and provided the plaintiff with a copy of the policy for her inspection. The plaintiff was subsequently hospitalized and incurred substantial medical bills; the insurer then refused to pay 80% of the hospitalization costs. The plaintiff brought an action for fraud, and the trial court entered a summary judgment for the defendant. This Court reversed, holding that the trial court had erred in holding that, as a matter of law, the plaintiff could not have justifiably relied on the statements made by the agent; this Court held that the fraud occurred, if at all, when the agent, by false statements, induced the plaintiff to give up her existing policy.
Henson makes much of the fact that the agent inHicks followed all the required procedures, such as reviewing the policy with the plaintiff, providing the plaintiff with a copy of the policy, and so on, while pointing out that Jones completely failed to follow similar procedures contained in the Celtic employee handbook. Henson urges that Jones's alleged statement "I will write a policy for Kerri, excluding the epilepsy," when considered in light of his omissions, presents a jury question as to the fraud claim.
Henson, however, misses the essence of the Hicks opinion. The agent in Hicks induced the plaintiff to act by affirmatively misrepresenting a fact — namely, the agent told her that the new policy would cover 80% of her medical bills when in fact it would not. Here, Jones made no such affirmative misrepresentation. His statement "I will write a policy for Kerri, excluding the epilepsy" was not an untrue statement; Jones actually did provide Henson with such a policy,[6] and Henson has received benefits from this policy. Therefore, Hicks
is of no assistance to Henson, and her argument on this ground must fail.
Henson next argues that the defendants fraudulently suppressed a material fact — that employment was a condition precedent for coverage under the policy — and that they had a duty to disclose that fact pursuant to Ala. Code 1975, §6-5-102. The elements of this cause of action have been stated as follows: 1) the existence of an undisclosed material fact; 2) the defendant's duty to disclose the material fact; and 3) the defendant's intentional failure to disclose the material fact when nondisclosure is intended to induce detrimental action. Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301 (Ala. 1983). The defendant's duty to disclose is particularly important, for ordinarily mere silence in a transaction does not constitute fraud. Chapman v. Rivers Constr. Co., 284 Ala. 633, 227 So.2d 403 (1969). However, a duty to speak can arise from the particular circumstances of the case, and the test we have often utilized in determining when a duty to speak exists includes the following: 1) the relation of the parties; 2) the value of the particular fact; 3) the relative knowledge of the parties; and 4) other circumstances. Deupree v. Butner,522 So.2d 242 (Ala. 1988); Lowder Realty, Inc. v. Odum,495 So.2d 23 (Ala. 1986). More specifically, we have held that a duty to disclose exists where the parties are not dealing at arm's length. RNH, Inc. v. Beatty, 571 So.2d 1039 (Ala. 1990).
Here, the materiality of employment as a condition to coverage under the policy is obvious, because it is the ground upon which Celtic has denied coverage; it is also clear and undisputed that Jones had far greater knowledge with respect to the policy in question and insurance matters in general than did Henson. In fact, it is quite probable that had Jones utilized this knowledge in accordance with the dictates of the Celtic employee handbook, this entire imbroglio could have been avoided. This unfortunate lack of adherence to Celtic's internal rules, however, cannot control this issue. As the defense notes in its brief, the application contains 32 references to employment on the first page alone. *Page 1274 
Also, the application, in "Section VI: AGREEMENTS AND SIGNATURE," contains the language "I am employed as described above and, at present, am gainfully employed and working at least thirty hours per week." While we do not agree that the application was totally unambiguous with respect to the requirement of employment, we do find that the application contained sufficient reference to the applicant's employment status to reasonably put Henson on notice as to its importance.See, e.g., Harlan v. Smith, 507 So.2d 943 (Ala.Civ.App. 1986) (plaintiff bringing action for fraud in connection with the purchase of a mobile home had duty to inquire into existing defects when he had inspected the home); Collins Co. v. City ofDecatur, 533 So.2d 1127 (Ala. 1988) (general contractor put on notice by ongoing investigation of Department of Labor so that project engineer's failure to forward EPA letter mandating that payrolls conform to labor standards did not constitute concealment). Also, Jones testified, and Henson's mother admitted, that they had a conversation regarding the employment status of Henson before Henson's mother took the application home for Henson to sign. Therefore, no material fact was undisclosed, and the trial court properly entered the summary judgment in favor of the defendants as to this count.
Henson next argues that the defendants negligently or wantonly failed to procure and provide a policy of insurance that would cover Henson in the manner in which Jones promised. This cause of action has been recognized in Alabama, and is exemplified by our decisions in Cornett v. Johnson,578 So.2d 1259 (Ala. 1991), and Crump v. Geer Brothers, Inc.,336 So.2d 1091 (Ala. 1976). Henson argues that because Jones totally failed to comply with Celtic's internal rules, which specifically instruct the agents to inform applicants of the employment requirement, the defendants should be liable on a negligence theory. The fact that a policy was not delivered to Henson until six months after the Charter Peachford claim was submitted buttresses this theory, according to Henson.
While Henson may have alleged a substantive basis for a negligence/wantonness cause of action, her claim is barred by the statute of limitations. The statutory period of limitations for negligence and wantonness actions, found at Ala. Code 1975, § 6-2-38, is two years from the date the injury occurred. Here, Henson admits that the injury occurred on September 23, 1987. She did not file her amendment to state a negligence or wantonness claim until June 6, 1991, and, even assuming that the amendment relates back to the filing of the original complaint on April 4, 1990, pursuant to Rule 15(c), Ala.R.Civ.P., her original complaint still was filed more than two years after the injury allegedly occurred. Henson attempts to circumvent the bar of the statute of limitations by alleging that she did not discover the injury until August 1, 1989. There is, however, no "discovery rule" to toll the running of the limitations period with respect to negligence or wantonness actions; the "discovery rule" in Alabama is applicable only to fraud actions. Ala. Code 1975, § 6-2-3. Hence, Henson's claim based on negligence or wantonness is time-barred.
Henson next argues that Celtic breached the contract of insurance by refusing to pay her claim based on services rendered by Charter Peachford hospital. It is fundamental that for a party to have a cause of action on an insurance contract, there first must exist a contractual relationship between the parties. St. Paul Fire Marine Ins. Co. v. Air ComfortEngineers, Inc., 47 Ala. App. 301, 253 So.2d 525 (Ala.Civ.App. 1971). Celtic contends that this rule precludes recovery by Henson, because, it says, no contract of insurance came into existence, because of Henson's misrepresentation of her employment status on the application for insurance. Celtic alternatively argues that, assuming a contract existed, it was justified in rescinding the contract pursuant to Ala. Code 1975, § 27-14-7. This section provides, in pertinent part: *Page 1275 
 "Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
". . . .
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would . . . not have issued the policy or contract . . . if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
Henson contends that Celtic is not justified in relying on § 27-14-7(a)(2), the section specifically cited by Celtic in its motion for summary judgment. Henson notes that the internal guidelines of Celtic and Dun Bradstreet define "risk" as medical or health-related risk; she also asserts that rescission is proper only where the medical risk to the insurer is increased by some misrepresentation of the applicant. Hence, she concludes that, because she says her alleged misrepresentation was not related to a medical or health risk, rescission was not justified.
Henson's argument, constructed from the internal rules of Celtic and cases from the United States Court of Appeals for the Eleventh Circuit,[7] is flawed, because it assumes that Celtic must rely on § 27-14-7(a)(2) for its authority to rescind the contract, whereas § 27-14-7(a)(3) is clearly pertinent and dispositive of the present situation. Therefore, §27-14-7(a)(2) is immaterial, and the only question is the good faith of the insurer in refusing to issue the policy if it had known of Henson's employment status at the time she applied. Because the practice of not issuing a policy to anyone employed less than 30 hours per week appears to be universally applied by Celtic, and thus not susceptible to a badfaith implementation, we hold that § 27-14-7 provides a ground for rescission and therefore defeats Henson's argument on this issue.
Henson's final contention is that, assuming Celtic had the right to rescind the contract because of Henson's misrepresentation, Celtic waived its right of rescission by its actions during and after the Charter Peachford hospitalization. Specifically, Henson alleges, Celtic and Dun Bradstreet had notice of her employment status immediately after the Charter Peachford hospitalization (January 23-February 4, 1989), because the bill submitted to Celtic by Charter Peachford on or before February 9, 1989, clearly stated that she was unemployed. Henson also points out that the February 7, 1989, computer bulletin, written by Celtic employee Robin Moss, indicated that Henson was unemployed; moreover, an internal memorandum dated July 20, 1989, concerning the claim in question contained the language "hours worked ? — waiveeligibility," and was directed to Robin Moss by another Celtic employee. (Emphasis added.) Henson also notes that Celtic actually paid smaller claims on the policy in late March and April for medical services rendered to her both before and after the Charter Peachford hospitalization;[8] these payments clearly came after Celtic had knowledge of her employment status. Finally, Henson asserts that Celtic continued to accept premiums on the policy until August 1989 and failed to tender the refund of the premiums until October 4, 1991. Henson argues that this evidence, combined with other proof presented to the trial court, was enough to present a genuine issue of material fact as to whether Celtic had a right to rescind the contract, and that the trial court erred in entering the summary judgment in favor of Celtic on the contract claim.
Celtic responds by asserting that this proof is immaterial, because, it says, this issue (the question of the right to rescind) is controlled by our decision in McGee v. GuardianLife Insurance Co., *Page 1276 472 So.2d 993 (Ala. 1985); the trial court agreed with the defendants and based its summary judgment as to the contract claim on that case.
In McGee, a widow brought an action to recover life insurance benefits from three insurers that had issued group life policies to her husband's employer. The first insurer, Guardian, had provided group coverage through the husband's employer until July 1, 1978, when the employer terminated the policy. Before the husband died in February 1979, two other insurers, Banker's Life and Provident, had in turn issued group plans to the employer. All three policies required that the employee be "actively at work" in order to be insured.
The husband became ill and stopped working in January 1978. After his death 13 months later, the insurers refused to pay life insurance benefits. The widow alleged that the insurers had waived the employment requirement by continuing to accept premiums from the husband after he became disabled. The trial court entered a summary judgment for the insurers.
On appeal, this Court held that the insurers, by accepting the premiums after McGee became disabled, had not waived the contractual provision requiring the employee to be "actively at work" in order to be insured. The Court stated the general rule regarding waiver:
 "Although the doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture, the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. Thus, coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written."
472 So.2d at 996, quoting Home Indemnity Co. v. Reed EquipmentCo., 381 So.2d 45, 50-51 (Ala. 1980). The Court then determined that the "actively at work" provision in the contract was a coverage provision, and thus that waiver was not available to enlarge the coverage, which was expressly limited by the policy. With respect to the later insurers — Banker's Life and Provident — the Court held that, because the husband had never been "actively at work" while their policies were in effect, their acceptance of premiums did not constitute a waiver.
Although at first blush McGee appears to control this case because of the similarity of the employment requirements in the two documents, careful scrutiny reveals substantial legal and factual differences between the situation in McGee and the present situation. First, even assuming that an employment requirement in an insurance contract is always a coverage provision, rather than a forfeiture provision, it is still necessary that the employment requirement be unambiguous in order to preclude the plaintiff's invocation of waiver or estoppel. In McGee, the requirement was clearly and unambiguously set forth in the insurance policy. Here, while the application contains sufficient notice of the employment requirement to prevent Henson from holding the defendants liable on a suppression of material fact theory, we cannot say that the application was totally free from ambiguity. Henson correctly asserts that the application nowhere states that employment is an absolute condition precedent to coverage under the policy. Although this requirement may be completely clear to anyone familiar with customary practice in the insurance industry, and is perhaps inferable to anyone with substantial business experience in general, we do not think that the application unequivocally makes the employment requirement an unambiguous coverage provision that is not subject to waiver. This is especially true in light of Jones's failure to explain the policy to Henson as he was required to do. The failure to explain the policy was crucial here, because the ambiguity of the application could have been dispelled with minimal time and effort. In fact, it may well be that Jones simply selected the wrong application form; we note that the application filled out by Henson is styled "Participating Employer Application," *Page 1277 
and there was never any indication that Von Braun Civic Center was participating in anything.
Another major difference between McGee and the present case is that the employment requirement in McGee was set forth in the policy itself, while here the requirement was embodied, to whatever extent, in an application for insurance. While it appears that this Court has never decided a case directly on point, it is clear that terms and conditions in an insuranceapplication — even conditions precedent to the commencement of the contract — may be waived by the insurer. See 16B John Appleman, Insurance Law and Practice, § 9083 (1981); 44 C.J.S.Insurance § 275(a)(2)(1945). The case for treating an employment requirement as a forfeiture provision subject to waiver, rather than as a coverage provision, is strengthened here because Celtic did not provide Henson with a copy of the policy until six months after she had filed her claim. Henson thus had only an ambiguous application from which to ascertain her rights.
Moreover, it is settled that acceptance of premiums by an insurer, after learning of a breach of a condition or ground for forfeiture, normally constitutes a waiver or estoppel.General Insurance Co. v. Killen, 270 Ala. 604, 120 So.2d 887
(1960). Also, the insurer must return the premiums within a reasonable time to avoid waiver or estoppel from arising from the acceptance of premiums in such a situation. Killen,270 Ala. at 615, 120 So.2d at 897-98.
In light of the foregoing discussion, we hold that the usually critical distinction between a coverage provision — which is not generally subject to waiver or estoppel — and a condition or a forfeiture provision — which is generally subject to such an argument — is unimportant under the facts here. If the employment requirement is characterized as a coverage provision, then the ambiguity of the application and the failure to give Henson a written policy precludes a summary judgment for Celtic because they raise a fact question as to whether the evidence adduced by Henson supports a finding of either a waiver or an estoppel against Celtic. Alternatively, if the employment requirement is characterized as a condition or a forfeiture provision, then it is waivable and a fact question is raised as to whether Celtic, by its actions, waived its right to rescind the contract or is estopped from utilizing that right. Because the trial court erred in holding that McGee
controls this case as a matter of law, we reverse the summary judgment for Celtic as to the contract count.
Based on the foregoing discussion of the issues, we affirm the judgment as to all the defendants on the fraud, suppression of material fact, negligence/wantonness, and bad faith counts.[9] We affirm the judgment as to Jones and Dun Bradstreet on the breach of contract count, because there was no evidence that either of those defendants had a contract with Henson. We reverse the judgment as to Celtic on the breach of contract claim, and we remand for further proceedings on that claim.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] Dun Bradstreet Plan Services and Plan Services are effectively the same entity, according to the deposition testimony of Thomas Stead, the vice-president of Celtic's claims department.
[2] Henson made each allegation in her complaint applicable to all the defendants. Obviously, the defendant Jones cannot be held liable for the breach of a contract to which he was not a party; also, the decision of whether to pay the claim in question was for Celtic to make and Jones cannot be held liable on the bad faith count.
[3] The record does contain a termination letter from the Von Braun Civic Center addressed to Henson and postmarked March 18, 1988. It is unclear how Henson could have been unaware of her employment status for the approximate six-month interim between the completion of the application and the receipt of the letter.
[4] The record does not reveal exactly when the claim was finally denied by Celtic. Celtic cancelled Henson's coverage on September 30, 1989; Henson did not learn of the cancellation of her coverage until she received a letter dated November 29, 1989.
[5] The record indicates that Celtic paid a claim on April 5, 1989, for medical treatment rendered to Henson by Crestwood Hospital on January 16, 1989. Celtic also paid a claim on March 23, 1989, for medical treatment rendered by the same hospital on March 8, 1989. Finally, Celtic paid a claim on April 5, 1989, for medical services rendered to Henson by Professional Anesthesia on March 21, 1989. The claims paid by Celtic were far smaller than the January 23-February 4, 1989, claim that is the subject of this controversy.
[6] The dispute over whether Jones effectively provided coverage, in view of the issue of Henson's employment status, does not support an allegation of affirmative misrepresentation, because there is no evidence that Jones had any information that Henson might not be employed.
[7] Henson relies upon State Farm Fire Casualty Co. v. Oliver,854 F.2d 416 (11th Cir. 1988), and Federal Kemper LifeAssurance Co. v. First National Bank of Birmingham,712 F.2d 459 (11th Cir. 1983), in her argument.
[8] See footnote 5 for the exact dates of the services rendered and the payments made by Celtic.
[9] From the evidence presented, it is clear that Celtic had at least a debatable or arguable reason not to pay the claim, so that the summary judgment was proper on the bad faith count.Miller v. Preferred Risk Mutual Insurance Co., 572 So.2d 1260
(Ala. 1990); Pierce v. Combined Insurance Co., 531 So.2d 654
(Ala. 1988). *Page 1278