This case arises out of Norse and Lydia Booker's purchase of a hospitalization insurance policy issued by United American Insurance Company ("United American"). The Bookers allege that they purchased the policy only after James Butcher made various misrepresentations to them. Butcher was not an authorized insurance agent of United American, but had been hired by Richard Stone, an agent of that company, despite United American's express directions to the contrary. The Bookers brought this action against United American; Torchmark Corporation, its corporate parent; and Richard Stone, but they did not sue Butcher. With respect to United American, the Bookers alleged fraudulent misrepresentation and suppression, and negligent or wanton supervision. The trial court entered a summary judgment for United American on each claim and made that summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P.[1] The Bookers appealed from that judgment for United American. We affirm.
Once a party moving for summary judgment presents evidence that, if uncontested, would entitle it to a judgment, a nonmoving party, if it is to defeat the summary judgment motion, must present "substantial evidence" in support of its claim. McGinnis v. Continental Ins. Co., 628 So.2d 470, 471
(Ala. 1993). In determining whether the nonmovant presented substantial evidence, this Court views the evidence in the light most favorable to the nonmovant or nonmovants, in this case the Bookers. Id. So viewed, the evidence shows that before 1991 Stone was an independent insurance agent who sold policies for several insurance companies. In 1986, Stone contracted with United American to sell its insurance policies. In 1989, because Stone had focused his energies on the construction business, he stopped selling insurance himself and retained Butcher as the "district manager/field manager" for his insurance business. Butcher was to hire and train agents and to solicit insurance business. Stone retained Butcher even though United American had not authorized Butcher to sell its products, but had in fact fired him in 1989 and had placed him on its "No Rehire List." Butcher operated out *Page 1335 
of Stone's home office and was paid a finder's fee for each policy he sold.
On May 15, 1991, Butcher met with the Bookers, who were seeking to purchase a major medical insurance policy after letting their prior major medical coverage lapse. Butcher represented himself as Stone. He indicated that United American had the ideal policy, one that would cover 80% of their medical expenses, and he told them that at no point would their out-of-pocket expenses amount to over $1,500. Actually, the policy was a hospitalization policy, not a major medical policy. In fact, United American did not offer a major medical policy for sale to anyone. Butcher filled out the policy application. Relying on Butcher's representations, the Bookers signed the application, wrote a check for the first three months' premiums, and handed both to Butcher.
After Butcher delivered the completed application to Stone, Stone telephoned the Bookers to see if they indeed wanted the health insurance. Mrs. Booker replied, "Yes, we need the health insurance." Stone signed the application as if he had taken it from the Bookers and mailed it to United American. When United American received the policy at its Dallas, Texas, headquarters, it was unaware that Butcher actually had sold the policy, because Stone had signed the application. Unaware of Butcher's involvement, United American processed the application and mailed the policy.
When the Bookers received the hospitalization policy, they attempted, without success, to contact someone at Stone's office to have the policy explained. The Bookers never contacted United American in Dallas.
In April 1993, Mr. Booker was hospitalized for heart problems that resulted in approximately $49,000 in medical bills. The United American hospitalization policy covered approximately $14,000 of the expenses. The Bookers realized they had not purchased a major medical insurance policy, and four months later they filed this lawsuit.
 I. FRAUDULENT MISREPRESENTATION AND SUPPRESSION
On appeal, the Bookers first contend that they presented substantial evidence creating a genuine issue of material fact and that the summary judgment was therefore improper as to their fraudulent misrepresentation and fraudulent suppression claims. Specifically, they assert that United American is liable for fraudulent misrepresentation and suppression because of: (a) Butcher's actions; and (b) Stone's actions.
 A. Butcher's Actions
The Bookers contend that United American is liable for Butcher's misrepresentations and suppression because, they argue, Stone, United American's agent, effectively appointed Butcher as a subagent of United American. We disagree.
The law regarding the responsibility of a principal for persons allegedly appointed as subagents is well settled.
 "When one employs an agent who has either express or implied authority to employ a subagent, the subagent will also be the agent of the principal. . . .
". . . .
 ". . . [However, t]he act of a subagent will not bind the original principal where the appointment of such subagent was not by authority, express or implied, or was not subsequently ratified by the principal. . . ."
3 C.J.S. Agency § 265 (1973). See 3 Am.Jur.2d Agency §§ 157, 162, 163 (1986). That is, a principal will be bound by the acts of a purported subagent only if: (1) the agent had express authority to appoint the subagent; (2) the agent had implied authority to appoint the subagent; or (3) the principal ratified the appointment.[2] See Consolidated *Page 1336 Underwriters Ins. Co. v. Landers, 285 Ala. 677, 681,235 So.2d 818, 822 (1970); Eagle Motor Lines v. Hood, 256 Ala. 395, 398,55 So.2d 126, 129 (1951); Butler v. Standard Life Ins. Co. ofthe South, 232 Ala. 238, 167 So. 307, 309-10 (1936); SchlossBros. Co. v. Gibson Dry Goods Co., 6 Ala. App. 155,60 So. 436, 437 (1912).[3]
The Bookers argue first that Stone was a general agent of United American with express authority to appoint subagents, including Butcher. The contract between United American and Stone, however, clearly contradicts this proposition. It specifically provides that Stone could only recommend subagents to United American for it to appoint and that United American would not appoint any recommended subagents until they were authorized to sell by United American and were licensed by the state insurance authorities.[4] United American did not appoint Butcher or authorize him with the Alabama insurance authorities. In fact, it is undisputed that United American was unaware of Stone's relationship with Butcher. Thus, Stone did not have express authority to appoint Butcher as United American's subagent.[5] *Page 1337 
Neither did Stone have the implied authority to appoint Butcher as United American's subagent. Of course, there can be no implied authority for Stone to appoint Butcher, given the contract's express reservation of all appointment power to United American. See Restatement (Second) of Agency § 34(e) cmt. h (1958) (stating that a formal writing authorizing an agent to act for a principal will be strictly construed in determining the scope of the agent's authority).[6] In addition, it is elementary that an agent cannot endow a subagent with more authority than the agent himself possesses. See InsuranceCo. of North America v. Thornton, 130 Ala. 222, 233-34,30 So. 614, 617 (1901) (holding that an insurance agent could not appoint a subagent to act in a manner contrary to the contract restrictions applicable to the agent). Clearly, Stone could not endow Butcher with the authority to sell for United American, without authority from United American and a license from the state insurance authorities,[7] when Stone himself was restricted to selling only with such authority and with a license in force.
That Stone had no implied authority to appoint Butcher as United American's subagent is further confirmed by the circumstances surrounding Butcher's alleged appointment. Implied authority for an agent to appoint a subagent may arise from "the nature of the agency, the work to be done, and the particular circumstances. . . . [W]here a delegation of power is not necessary, proper, or usual, there is no implied power in the agent to delegate his power to a subagent. . . ." 3 C.J.S. Agency § 261. See 3 Am.Jur.2d Agency § 157. It was not "necessary, proper, or usual" for Stone to appoint Butcher as a subagent for United American, given that United American had revoked Butcher's authority to sell its products, fired him, and placed him on its "No Rehire List." Thus, Stone did not have implied authority to appoint Butcher as United American's subagent.
The Bookers next contend that the actions they say Butcher took as United American's subagent were ratified by Stone. This contention misses the point of ratification. It is the principal's ratification, not the agent's, that is controlling. See 3 C.J.S. Agency § 265 (stating that the subagent's actions bind the principal only if the principal ratifies those actions). For example, in American Pioneer Life Insurance Co.v. Sandlin, 470 So.2d 657, 664-65 (Ala. 1985), this Court refused to overturn a judgment based on a jury verdict imposing liability for a third-party agent's action when the insurance company had knowingly received the application from the third party, had approved the application, had returned it to the third party for completion, had referred to the third party as the agent in correspondence with the insured, and had subsequently made the third party its direct agent. See generally Butler, 232 Ala. at 242, 167 So. at 309-10 (requiring a knowing ratification to bind a principal to the acts of a subagent). In contrast, United American never knowingly received the application from Butcher, never referred to Butcher as its agent in its correspondence with the Bookers, and never made Butcher its agent after the sale to the Bookers. Simply put, United American was incapable of knowingly ratifying Butcher's conduct, of which it was unaware. Thus, United American is not liable for the actions *Page 1338 
of Butcher.[8]
 B. Stone's Actions
The Bookers argue that even if United American is not liable for Butcher's misdeeds, it is liable for its agent Stone's misrepresentations and suppressions.[9] The Bookers, fail, however, to present substantial evidence of either misrepresentations or suppressions on the part of Stone.
In order to succeed on a fraud claim, the plaintiff must show: (1) that the defendant misrepresented a material fact; (2) that the defendant made the misrepresentation willfully to deceive, or recklessly without knowledge; (3) that the plaintiff relied upon the misrepresentation; and (4) that the plaintiff incurred damage as a proximate consequence of the reliance. Ala. Code 1975, § 6-5-101; Harris v. M S Toyota,Inc., 575 So.2d 74, 76 (Ala. 1991). The plaintiff may show that the defendant's failure to disclose, or suppression of, a material fact, rather than an affirmative misrepresentation, induced the reliance and proximately caused the damage. Ala. Code 1975, § 6-5-102; Crigler v. Salac, 438 So.2d 1375,1381 (Ala. 1983).
To succeed on their allegation of misrepresentation, the Bookers must present substantial evidence indicating that Stone's involvement with Butcher went beyond allowing Butcher to act as the manager of Stone's insurance business, to Stone's actual participation in the alleged fraudulent acts of Butcher. See generally Sandlin, 470 So.2d 657, 664-65 (upholding a jury verdict against an insurance company where its officers and employees knew of and discussed the substantial difference in the initial $24,000 premium and the initial $12,000 cash surrender value that ultimately served as the basis of the fraud action).
The facts presented in opposition to the summary judgment motion showed that Stone hired Butcher and that Stone signed the Bookers' application as if he had taken it himself. Stone's hiring of Butcher, however, knowing (1) that United American had not authorized him to sell its product, (2) that United American had fired Butcher, and (3) that United American had placed Butcher on its "No Rehire List," indicates that Stone made misrepresentations to United American, not to the Bookers. Similarly, Stone's signing of the Bookers' application shows an intent to deceive United American, not the Bookers.
The Bookers argue that Stone's providing Butcher with an office, with the United American insurance applications, and with the Bookers' names indicates that Stone directly participated in Butcher's fraud. While these facts support the assertion that Stone hired Butcher as a district manager/field manager for Stone's insurance business, they do not support the key contention that Stone instructed Butcher to make misrepresentations to the Bookers.
The Bookers further contend that Stone signed several applications that Butcher and another unknown man had taken after making what are characterized as similar misrepresentations, and that this indicates Stone had a practice of instructing his agents to make misrepresentations. That Butcher and some other unknown man made similar misrepresentations to other customers does not constitute "substantial evidence" that Stone, not Butcher, was responsible for, or was even aware, of the misrepresentation. As the Bookers admit, Stone stopped selling insurance himself and hired Butcher as a district manager/field manager to solicit insurance and to hire and train agents. Thus, the limited evidence offered in opposition to United American's motion for summary judgment indicates that it was Butcher, not Stone, who trained the unknown agent who allegedly made a misrepresentation. *Page 1339 
While there is evidence that Butcher committed a fraud, there is a stark absence of evidence that Stone participated in the acts of which the Bookers complain. There is no evidence that Stone's authority with United American or license with the state insurance authorities had been revoked. There was no evidence that Stone made misrepresentations to customers before 1989, when he was selling insurance himself, or at any time thereafter. Thus, the trial court properly held that the Bookers failed to present substantial evidence that Stone actively participated in Butcher's misrepresentation. SeeWilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359, 361
(Ala. 1993).
With respect to the suppression claim,[10] the Bookers assert that when Stone telephoned Mrs. Booker and asked if the Bookers wanted the health insurance, he suppressed material facts about the policy. Even assuming arguendo that Stone did suppress facts during the telephone conversation, such suppression did not induce the Bookers to act. The Bookers had signed the application and had written the check for the first three months' premiums before Stone telephoned. The reliance and the injury complete, Stone's post-hoc telephone call did not proximately cause the injury of which the Bookers complain. SeeCrigler, 438 So.2d at 1381 (stating that to be actionable the suppression of a material fact must "induce action on the part of the complaining party") (citing Cooper v. Rowe, 208 Ala. 494,94 So. 725 (1922)). Thus, the Bookers did not present substantial evidence indicating that Stone, as United American's agent, made misrepresentations or suppressed material facts.[11]
 II. STATUTE OF LIMITATIONS FOR NEGLIGENCE AND WANTONNESS CLAIMS
The Bookers assert that the trial court improperly granted United American's summary judgment motion on their claims of negligent or wanton supervision of Stone, and on the question of its liability for Stone's own negligent or wanton behavior. The trial court held that these claims were barred by the applicable statute of limitations. We agree.
Section 6-2-38, Ala. Code 1975, provides a two-year limitations period for claims alleging liability for negligence, whether the liability is direct or based upon the doctrine of respondeat superior.[12] Thus, a plaintiff must bring a negligence action within two years of the time the action accrued. Because the savings provision for fraud actions (§6-2-3) does not operate to postpone the running of the limitations period for nonfraud claims, whether the Bookers' negligence and wantonness claims are time-barred depends on when they accrued.
It is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury. Henson v. Celtic Life Insurance Co.,621 So.2d 1268, *Page 1340 
1271, 1274 (Ala. 1993). In Henson, 621 So.2d at 1271, 1274, this Court held that the plaintiff's completion of an application for a health insurance policy started the running of the two-year limitations period for a negligence action. Further, in Henson, 621 So.2d at 1273, this Court commented that an action for inducing a plaintiff to give up an old insurance policy in favor of a new policy accrued when the plaintiff gave up the old policy. In this case, as in Henson, 621 So.2d at 1274, the Bookers admit that any negligence or wantonness on the part of Stone or United American occurred, at the latest, in May 1991, when the Bookers signed the application and wrote the check for the policy. Thus, their claims accrued in May 1991. Because the Bookers filed their complaint in August 1993 — over two years after their claims accrued — their negligence and wantonness claims are time-barred.
The summary judgment in favor of United American is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, and KENNEDY, JJ., concur.
SHORES, J., recuses.
[1] The trial court also entered a summary judgment for Torchmark Corporation, but did not enter a summary judgment as to Stone. Neither Torchmark nor Stone is a party to this appeal. The claims against Stone are pending in the trial court.
[2] Of course, once a third party is validly appointed a subagent, the principal is liable for the subagent's actions. 3 C.J.S.Agency § 265; 3 Am.Jur.2d Agency § 163. The scope of the liability of a principal for its validly appointed subagent depends on whether the subagent is a soliciting subagent or an independent subagent. See generally Washington National Ins.Co. v. Strickland, 491 So.2d 872, 874-75 (Ala. 1985) (stating that principals are liable for the actions of soliciting agents under the doctrine of respondeat superior and for the actions of independent agents under the principles of actual and apparent authority).
[3] See also Buisson v. Potts, 180 La. 330, 156 So. 408 (1934) ("The agent has not the right of substitution unless specifically authorized by his principal."); Sams v. Arthur,135 S.C. 123, 133 S.E. 205 (1926) ("Where the agent employs his own servants, and directs their movements, [as opposed to where the principal controls their actions,] without the slightest inference by the principal, it is manifest that the reason for holding the principal responsible for the delicts of the agent no longer exists, and the principal cannot be held liable for the delicts of a servant of the agent, under the circumstances."); see generally Texas Co. v. Brice, 26 F.2d 164
(6th Cir. 1928) (stating that "the principal may consent to the employment of subagents on such terms as please him, and, where he has consented only upon the express or implied condition that the subagent shall not be deemed his agent, that condition, as between the parties must control").
[4] The Bookers' counsel have selected from United American's contract certain statements to quote in the Bookers' appellate brief. The quotations the Bookers' counsel have selected do not persuade us that Stone was a general agent with the express authority to appoint Butcher. The contract, with the portions the Bookers' counsel chose to excise added back in (and shown with emphasis), provides in pertinent part:
 "The Agent is hereby appointed a General Agent of the Company and is authorized to solicit in person, or through sub-agents contracted by the Agent, applications for insurance in the Company, to forward same to the Company for approval or rejection, and to collect the initial premium payments due on such applications. It is expressly agreed that the relationship of the Agent or sub-agent with the Company shall be that of an Independent Contractor only, and that nothing contained herein shall be construed to create the relationship of employer and employee. The Company may from time to time prescribe rules respecting the requirements for eligibility of applicants for insurance. . . .
". . . .
 "The Agent is authorized to recruit and recommend to the Company soliciting agents, herein called 'subagents.' All contracts with such sub-agents shall be made directly with the Agent, but the sub-agent shall not be allowed to solicit insurance for the Company unless the sub-agent is duly licensed in the State and until the sub-agent is appointed by the Company with the State Insurance Department. The Company reserves the right to refuse to license or appoint any proposed sub-agent, or once done, to thereafter terminate the same.
". . . .
 "The Agent or sub-agent shall have no authority other than expressly granted herein, and no forbearance or neglect on the part of either the Agent or sub-agent of the Company shall be construed as a waiver of any of the terms of this Contract or imply the existence of any authority not expressly granted herein. The Agent or subagent is not authorized to make any contract or incur any debt in the name of the Company; nor to make, modify or amend any application for insurance or any policy of insurance; nor to extend the time for making any payment which may become due on any policy; nor to waive any of the Company's rights or privileges under its policies or applications; nor to collect or receipt for premiums other than the initial premiums with applications for insurance."
(Emphasis added.) It is clear that Stone did not have express authority to appoint Butcher as United American's subagent. United American expressly reserved that appointment authority to itself.
[5] The contract between Stone and United American, supra, note 4, indicates that Stone was a "soliciting agent." A soliciting agent is one who is authorized to act in a particular transaction or in a particular way, but has no power to bind the insurance principal in contract. Washington National Ins.Co. v. Strickland, 491 So.2d 872 at 874-75 (Ala. 1985). It is the powers conferred on Stone by the contract, not the label of "General Agent," that controls. Ragsdale v. Life Ins. Co. ofNorth America, 632 So.2d 465, 468 (Ala. 1994). Here, the contract simply authorized Stone to solicit applications for United American, collect the initial premium payments, and "forward the same to the Company for approval or rejection." This Court has held:
 "[A] mere soliciting agent, with power only to solicit insurance, deliver policies, and collect premiums may not subject the [insurance company] to liability by his appointment of a third party as subagent, without the authority from, or knowledge, acquiescence, or waiver of, the [insurance company]."
Butler v. Standard Life Ins. Co. of the South, 232 Ala. 238,242, 167 So. 307, 309-10 (1936). Thus, Stone could appoint Butcher as a subagent of United American only if United American expressly or impliedly authorized the appointment or ratified it after the fact.
[6] See supra note 4.
[7] The Alabama insurance authorities revoked Butcher's license to sell insurance in Alabama in March 1991, approximately two months before Butcher allegedly made the misrepresentations to the Bookers.
[8] In effect, Butcher may have acted as Stone's agent, but not as United American's subagent. See 3 C.J.S. Agency § 265 (stating that an unauthorized subagent will bind only the agent, not the principal). Proceedings on the claims against Stone, which are currently pending in the trial court, should determine this issue.
[9] Because Stone was United American's soliciting agent, supra, note 5, United American would be liable for Stone's misrepresentations, if at all, under the doctrine of respondeat superior. Washington National Ins. Co. v. Strickland,491 So.2d 872 at 874-75 (Ala. 1985).
[10] A claim for fraudulent suppression requires that the plaintiff show: (1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff. Interstate TruckLeasing, Inc. v. Bender, 608 So.2d 716 (Ala. 1992).
[11] The Bookers also cast their argument for United American's liability in the form of a conspiracy claim. The Bookers allege that United American, through Stone, participated in a conspiracy to defraud them. Because we have concluded that the Bookers failed to present substantial evidence that Stone was involved in the fraud complained of, the Bookers' conspiracy claim is without merit. See Allied Supply Co. v. Brown,585 So.2d 33, 36 (Ala. 1991) (holding that "[i]f the underlying cause of action is not viable, the conspiracy claim must also fail").
[12] Ala. Code 1975, § 6-2-38, provides in pertinent part:
 "(l) All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.
". . . .
 "(n) All actions commenced to recover damages for injury to the person or property of another wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant, or employee under the doctrine of respondeat superior must be brought within two years."